BYRNE *v*. CLARK EQUIPMENT CO.

1. WORKMEN'S COMPENSATION—HERNIA—INFECTION—DEPENDENTS.
   If fatal infection was caused by surgical repair of hernia, compensable under the workmen's compensation act, employee's dependents would be entitled to compensation (2 Comp. Laws 1929, §§ 8421, 8428; Act No. 10, part 7, §§ 2, 3, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

2. SAME — HERNIA — APPENDECTOMY — INFECTION — DEATH — PROXIMATE CAUSE.
   Dependents of employee who suffered compensable hernia, whose appendix was removed when hernia was repaired, pursuant to agreement with doctor performing the operation, and who thereafter developed a fatal infection would not be entitled to recover workmen's compensation if the infection was caused by the appendectomy since there would be no direct causal connection between the original injury and the appendectomy (2 Comp. Laws 1929, §§ 8421, 8428; Act No. 10, part 7, §§ 2, 3, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

3. SAME—DEPENDENTS—BURDEN OF PROOF—PROXIMATE CAUSE—DEATH.
   In a proceeding to recover workmen's compensation for death of an employee, the burden is on dependent widow to establish her claim for compensation and show that original injury was the proximate cause of death (2 Comp. Laws 1929, § 8428).

4. SAME—WIDOW—BURDEN OF PROOF—HERNIA—APPENDECTOMY—PERITONITIS—DEATH—PROXIMATE CAUSE.
   In widow's proceeding to recover workmen's compensation for death of employee who suffered a compensable hernia while lifting steel axle housings and had his appendix removed when surgical repair of ventral hernia was effected, and thereafter· suffered fatal peritonitis, plaintiff had the burden of proving that decedent's hernia injury was the proximate cause of his death (2 Comp. Laws 1929, §§ 8421, 8428; Act No. 10, part 7, §§ 2, 3, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

5. Same — Widow — Hernia — Appendectomy — Peritonitis — Death—Proximate Cause—Burden of Proof.

In widow's proceeding to recover workmen's compensation for death of husband who had suffered a ventral hernia and had an appendectomy performed when hernia was repaired, followed by fatal peritonitis, where department of labor and industry found it could not determine whether the source of the fatal infection was the repair of the hernia or the appendectomy, plaintiff failed to sustain her burden of proving proximate cause of death was the hernia (2 Comp. Laws 1929, §§ 8421, 8428; Act No. 10, part 7, §§ 2, 3, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

6. Same—Findings by Department—Review by Supreme Court.

Upon appeal from an award by the department of labor and industry, the Supreme Court does not judge the facts but confines itself to a review of the record to determine whether or not there is evidence supporting the award (2 Comp. Laws 1929, § 8451).

7. Same—Hernia—Appendectomy—Peritonitis—Finding of Department—Medical Testimony.

In widow's proceeding to recover workmen's compensation for death of husband who had suffered a ventral hernia and who had his appendix removed when hernia was repaired, finding of department of labor and industry that source of infection which caused fatal peritonitis was unknown *held*, supported by medical testimony clearly indicating that the source of the infection could not be positively determined. (2 Comp. Laws 1929, § 8451).

8. Same—Inferences.

Where two inferences equally consistent with the facts arise out of established facts, one involving liability on the part of the employer under the workmen's compensation act and the other relieving him from liability, the applicant must fail.

9. Same—Finding of Department—Burden of Proof.

Finding of department of labor and industry that source of fatal peritonitis was unknown did not support award of compensation to widow for death of her husband who had suffered a ventral hernia and had had an appendectomy performed when hernia was repaired, plaintiff's burden of showing direct causal connection between operation and peritonitis not having been sustained so as to show proximate cause of death was due to the compensable injury (2 Comp.

Laws 1929, §§ 8421, 8428; Act No. 10, part 7, §§ 2, 3, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

Appeal from Department of Labor and Industry. Submitted April 8, 1942. (Docket No. 26, Calendar No. 41,902.)   Decided June 10, 1942.

Josephine Byrne, widow, presented her claim against Clark Equipment Company, employer, and Liberty Mutual Insurance Company, insurer, for compensation for death of plaintiff's husband, Joseph L. Byrne, while in defendant's employ. Award to plaintiff. Defendants appeal. Reversed.

*Donahue & Grathwohl,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendants.

STARR, J.   Defendants appeal from an award of the department of labor and industry granting plaintiff compensation of $18 per week for 300 weeks, beginning March 1, 1941, together with medical, hospital, and funeral expenses.

Plaintiff's decedent husband was employed by defendant Clark Equipment Company. His regular work was the lifting of steel axle housings, weighing from approximately 60 to 180 pounds, off a cooling rack and carrying them 6 or 7 feet to a rolling machine. During an 8-hour day's work he handled from 240 to 300 axle housings.

On February 7, 1941, plaintiff's decedent told the personnel manager of the Clark Equipment Company that "he thought he had a rupture." He was instructed to go to the first aid department and make out the "usual form." On the same date plaintiff's decedent went to Dr. Henderson, a physician and surgeon who, the record indicates, was not employed

by defendant Clark company.  Dr. Henderson examined him and found that he had a ventral hernia, located about two inches above the navel, and advised an operation.  On February 20, 1941, Dr. Henderson operated on him for repair of the hernia and during the operation removed his appendix. Following such operation infection developed, and on February 28, 1941, plaintiff's decedent died of peritonitis.

On March 21, 1941, plaintiff filed application under the so-called occupational disease law, Act No. 10, part 7, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–1 *et seq.*, Stat. Ann. 1941 Cum. Supp. § 17.220 *et seq.*), for compensation for the death of her husband.  Defendant answered denying liability.  The matter was heard before a deputy commissioner of the department of labor and industry who awarded compensation of $18 per week for the statutory period of 300 weeks, together with medical, hospital, and funeral expenses.  On review the award of the deputy commissioner was affirmed by the department, its opinion stating, in part:

"Counsel for the defendants argue with great force the fact that plaintiff's decedent's doctor, while in the course of performing the operation, carried out an understanding that plaintiff's decedent's doctor had with plaintiff's decedent that he would also, at the time he performed the operation to repair the hernia, remove plaintiff's decedent's appendix if it didn't cause too much difficulty.  Defendants argue in this connection that it developed that plaintiff's decedent had a white cell blood count of 18,600 and that in the course of the operation for the hernia a chronic appendix was removed and that therefore plaintiff's decedent, if he received an infection, that it was more likely to have come from the chronic appendix, from which infection peritonitis developed, and that the cause of death did not result from the

operation to repair the hernia. We must bear in mind, however, in view of defendants' contention, *that there is no positive testimony as to the definite source of the infection that resulted in peritonitis* and the same will be borne out upon observing the testimony of both of the doctors who testified for the defendants and plaintiff respectively.   *   *   *

"Our Supreme Court has said, where the doctors opine the department cannot find, and in the case at bar *we do not feel that it is necessary to solve the medical enigma that the medical testimony finds itself enmeshed in, with particular reference to the source of the infection that resulted in peritonitis and death of plaintiff's decedent.*

"The record clearly indicates that plaintiff's decedent suffered a hernia as the result of strain arising out of and in the course of his employment; in order to repair same an operation became necessary, infection followed, *the source of which is unknown,* peritonitis developed resulting in death.''

Defendants were granted leave to appeal. In their brief defendants admit, in effect, that the ventral hernia sustained by plaintiff's decedent arose out of and in the course of his employment and was promptly reported. However, they contend, in substance, that under the department's finding that it could not determine the source of the infection resulting in plaintiff's decedent's death, plaintiff has failed to sustain the burden of proof that the hernia and operation therefor was the proximate cause of death.

Plaintiff contends, as stated in her brief, that the operation was performed *primarily* for the repair of the hernia, which arose out of and in the course of the decedent's employment; that the removal of the appendix was *an incident* of such operation; that the decedent died as a result of infection following such operation; that, although it is unknown whether the

infection resulted from the repair of the hernia or the removal of the appendix, there is a reasonable inference that such infection and death resulted from the repair of the hernia.

Dr. Henderson, who performed the operation, testified, in part:

"*Q.* And what was the result of that operation?
"*A.* Mr. Byrne developed an ileus of the bowel, stoppage of the bowel, and died of peritonitis. * * *

"*Q.* Would you say that peritonitis was a result of his operation for hernia?
"*A.* Yes. * * *
"*Q.* Now at the time you operated on Mr. Byrne for hernia, you also removed his appendix, didn't you?
"*A.* Yes.
"*Q.* Why did you remove his appendix?
"*A.* He had some tenderness over the region of the appendix and I promised to remove it for him at the time of the operation if we didn't run into too much difficulty. * * *
"*Q.* I know, but what caused it, was the appendix inflamed or infected, or what caused the tenderness?
"*A.* He had a chronic inflamed condition of the appendix.
"*Q.* Is that infection of the appendix?
"*A.* Yes. * * *
"*Q.* And after you had closed the suture—by the way, did you operate and repair the hernia and take out the appendix in the same incision?
"*A.* Yes.
"*Q.* Where did you make the incision with reference to the hernia?
"*A.* Directly over the hernia, mid-line above the navel two inches, starting an inch and a half above the navel, incision about two and one-half inches long.
"*Q.* Extending upward?

"*A.* Yes.

"*Q.* How far was that incision from the appendix?

"*A.* I would say seven inches.

"*Q.* About seven inches, so in order to remove that appendix it was necessary, instead of pulling the appendix straight out that had to be pulled out sideways?

"*A.* We had to lift the whole bowel up through the hole, regardless of where the hole was.

"*Q.* Were you able successfully to repair the hernia?

"*A.* Yes.

"*Q.* Then peritonitis developed a few days after the incision had been closed?

"*A.* No, he developed an ileus.

"*Q.* Is that bowel stoppage?

"*A.* Yes, the bowel didn't function.

"*Q.* What caused that?

"*A.* Peritonitis.   *   *   *

"*Q.* By the way, you did an operation later in seeking to correct the peritonitis?

"*A.* To relieve the gas in his intestines.   *   *   *

"*Q.* When you did the second operation could you tell where that peritonitis started from?

"*A.* No, the whole bowel seemed to be practically the same from what we could observe from the small opening we made.

"*Q.* Is it more likely that the peritonitis developed from the appendix than that it developed from the hernia?

"*A.* Well, we made our incision over the stump of the appendix to determine that condition and there were no adhesions or infection in the region of the appendix.   *   *   *

"*Q.* I will repeat my question—isn't it as likely that the infection or peritonitis resulted from the appendix as it would have resulted from the hernia?

"*A.* Either way.

"*Q.* And it is impossible to tell which caused the peritonitis?

"*A.* Yes.

"*Q.* So it is impossible for you to say whether this peritonitis which was the direct cause of death resulted from the removal of the appendix or the operation of the hernia?

"*A.* I don't know which side started it.    *    *    *

"*Q.* What was the blood count on this patient, white blood count, do you have your records of it?

"*A.* At what time?

"*Q.* Before the operation?

"*A.* 18,600.

"*Q.* What is normal blood count?

"*A.* Usually expect to find it 7,500.    *    *    *

"*Q.* Would there be any increase in the white blood count by this hernia if the appendix had been normal?

"*A.* I have never encountered it."

Dr. Mitchell, called as a witness by defendant Clark company, testified, in part:

"*Q.* Doctor, what is there about an operation for ventral hernia such as described by Dr. Henderson that might cause peritonitis?

"*A.* The only thing that could cause peritonitis would be an outside infection at the time of the operation. Infectious material of some kind entering into the field of the operation during the operation.

"*Q.* What is there about the operation for appendicitis as described by Dr. Henderson that might cause peritonitis?

"*A.* If you get—if you have an appendix with a blood count of 18,000 you have a lot of infection in the appendix. It is very easy sometimes for that infection to extend into the tissues even under the base of substances, to extend into the internal cavity and produce peritonitis, or in removing an infectious appendix from that distance, there is danger of tearing, or this infection getting out into the abdominal cavity.

"*Q*.  I want to ask you about the incision.  You heard Dr. Henderson testify as to where he made the incision?

"*A*.  Yes.

"*Q*.  Is that the normal incision to remove the appendix?

"*A*.  No, it is not.    *    *    *

"*Q*.  Is it possible for you to say definitely whether this peritonitis resulted from the removal of the appendix, or from the operation of the hernia?

"*A*.  No, I couldn't say positively which it came from.

"*Q*.  Which, in your opinion, would be more likely the cause?

"*A*.  The removal of the appendix would be more likely.    *    *    *

"*Q*.    *    *    *    You can't tell us what caused the peritonitis?

"*A*.  Yes, it is caused by infection.

"*Q*.  Yes, but you don't know where it came from, whether it was the infected appendix or the result of the hernia which the man suffered?

"*A*.  No, I don't know positively."

Plaintiff claims compensation under the occupational disease law, which provides in part:

"The disablement of an employee resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury by accident within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein:    *    *    *

"28.  Hernia—Clearly recent in origin and resulting from a strain, arising out of and in the course of employment and promptly reported to the employer."  Act No. 10, part 7, § 2, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-2, Stat. Ann. 1941 Cum. Supp. § 17.221).

Section 3 of the same part of the act (Comp. Laws Supp. 1940, § 8485–3, Stat. Ann. 1941 Cum. Supp. § 17.222) provides, in part:

"If an employee is disabled *or dies* and his disability *or death* is caused by *one of the diseases* (hernia) mentioned in the schedule contained in section 2 of this part and *the disease is due to the nature of the employment* in which such employee was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement."

Section 8421, 2 Comp. Laws 1929 (Stat. Ann. § 17.155), provides that, "if death results from the injury," the employer shall pay the dependents of the employee the prescribed compensation for a period of 300 weeks from the date of the injury.

Section 8428, 2 Comp. Laws 1929 (Stat. Ann. § 17.162), provides, in part:

"If the injury so received by such employee was the *proximate cause of his death,* and such deceased employee leaves dependents, as hereinbefore specified, wholly or partially dependent on him for support, the death benefit shall be a sum sufficient, when added to the indemnity which shall at the time of death have been paid or become payable under the provisions of this act to such deceased employee, to make the total compensation   *   *   *   equal to the full amount which such dependents would have been entitled   *   *   *   in case the accident had resulted in immediate death."

We are confronted with the department's finding above quoted, which states, in effect, that the source of the infection resulting in the death of plaintiff's decedent *is unknown* and that it is not necessary to determine the source of such infection. In other words, the department found that from the testimony

presented it could not determine the source of the infection and that it was unnecessary to determine the source.

If the infection resulting in the death of plaintiff's decedent was caused by the surgical repair of the hernia, plaintiff would be entitled to compensation, there being a direct causal connection between the injury causing the hernia and the infection resulting from the operation for its repair. *Crawley* v. *General Motors Truck Corp.*, 259 Mich. 503 (31 N. C. C. A. 529). However, if the infection resulting in death was caused by the appendix removal, plaintiff could not recover compensation, as there would be no direct causal connection between the original injury and the appendix removal.

The burden was upon plaintiff to establish her claim for compensation. *Putnam* v. *Beechler*, 299 Mich. 552; *Dulyea* v. *Shaw-Walker Co.*, 292 Mich. 570. It was incumbent upon her to prove that her decedent's hernia injury was the proximate cause of his death.

The department did not make a finding that the infection resulted from the repair of the hernia. It did, however, make a finding that from the testimony it could not determine the source of the infection. Therefore, plaintiff has failed to sustain the burden of proving that the original hernia injury, through direct causal connection with the operation and resulting infection, was the proximate cause of her decedent's death.

Upon appeal from an award by the department of labor and industry we do not judge the facts but confine ourselves to a review of the record to determine whether or not there is evidence supporting the award. 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186); *Putnam* v. *Beechler, supra; Flores* v. *Nicholson Terminal & Dock Co.*, 299 Mich. 5; *Lynch*

v. *R. D. Baker Construction Co.,* 297 Mich. 1. In the present case the medical testimony clearly indicated that the source of the infection could not be positively determined. Such testimony supported the department's finding that the source of the infection was unknown.

The department's award of compensation was apparently based upon an inference drawn from the testimony that the infection and death resulted from the operation for repair of the hernia, and not from the appendix removal. Such inference, in view of the department's finding that it could not determine the source of the infection, could only be drawn through conjecture or speculation. There were two possible inferences equally consistent with the facts: one, that the infection and death resulted from the hernia repair; and the other, that the infection and death resulted from the appendix removal. In *Chaudier* v. *Stearns & Culver Lumber Co.,* 206 Mich. 433, 442 (5 A. L. R. 1673), we said:

"Where two inferences equally consistent with the facts arise out of established facts, one involving liability on the part of the employer under the act and the other relieving him from liability, the applicant must fail."

See, also, *Putnam* v. *Beechler, supra; Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich. 130; *Dulyea* v. *Shaw-Walker Co., supra; McCoy* v. *Michigan Screw Co.,* 180 Mich. 454 (L. R. A. 1916 A, 323, 5 N. C. C. A. 455).

We, therefore, have a situation in which it was impossible for the department of labor and industry to determine, except through speculation or conjecture, whether the death of plaintiff's decedent resulted from the hernia repair or the appendix removal. We cannot indulge in conjecture or specula-

tion to infer that the infection and death resulted from the hernia repair when the testimony tends to indicate that the infection and death may have resulted from the appendix removal.

Plaintiff has failed to sustain the burden of proving that the hernia injury, through direct causal connection with the operation and infection, was the proximate cause of her decedent's death. The finding of the department does not sustain its award.

The award is vacated, with costs to defendants.

Chandler, C. J., and Boyles, North, Butzel, Bushnell, and Sharpe, JJ., concurred. Wiest, J., took no part in this decision.