LAUDER *v.* PAUL M. WIENER FOUNDRY.

1. WORKMEN'S COMPENSATION—SILICOSIS—DISABILITY—DEATH.

The same rules apply in determining liability of an employer for payment of workmen's compensation on a claim arising from silicosis whether the employee suffers disability or dies therefrom (CL 1948, § 417.3).

2. SAME—OCCUPATIONAL DISEASE—WAGE-EARNING CAPACITY.

An employee who is able to earn wages at another occupation, equal to those received prior to his disablement from an occupational disease is not entitled to workmen's compensation, the amount of pay received in another employment not being controlling, but rather the wage-earning capacity (CL 1948, § 417.3).

3. SAME—CONSTRUCTION OF STATUTES—INTENT—PROXIMATE CAUSE—HEALTH, ACCIDENT AND OLD-AGE INSURANCE.

The compensation law is to be construed liberally to provide indemnity for accidents peculiarly incidental to employment, but it was not intended to be health, accident and old-age insurance and spread general protection over risks common to all and not arising out of and in the course of employment.

4. SAME—SILICOSIS—WAGE-EARNING CAPACITY—EVIDENCE.

Employee who was disabled because of silicosis contracted while employed at defendant's foundry and paid compensation there-

REFERENCES FOR POINTS IN HEADNOTES

[1] See, generally, 58 Am Jur, Workmen's Compensation § 340 *et seq.*
[2, 4] 58 Am Jur, Workmen's Compensation §§ 284, 285.
[2, 4] Workmen's compensation: Right to compensation as affected by fact that injured employee earns, or is offered, as much as, or more than, before the injury. 149 ALR 413.
[3] 58 Am Jur, Workmen's Compensation § 27.
[5] 58 Am Jur, Workmen's Compensation § 278.
[6] 58 Am Jur, Workmen's Compensation § 543.
[6] Constitutionality, construction, application, and effect of provisions of workmen's compensation acts in relation to costs or expenses on appeal or review. 79 ALR 678.

for was not entitled to compensation for period during which he received equally high wages from another employer at work that did not constitute so-called "favored employment," since he thereby established an earning capacity at another occupation that was neither unhealthful nor injurious and that was as great as that he had when released from defendant's foundry (CL 1948, § 417.3).

5. SAME—SILICOSIS—SUBSEQUENT DISABILITY FROM OTHER CAUSES. Employee who was disabled from continuing in defendant's employment by reason of silicosis may not recover compensation for period subsequent to time he worked at another job at which he received equally high wages from a different employer at work not characterized as favored employment and from which he was separated by reason of cancer of the throat, not connected with his original disability (CL 1948, § 417.3).

6. COSTS—CONSTRUCTION OF STATUTES. No costs are allowed on appeal in proceeding to recover workmen's compensation, where the issue involved is the interpretation of a statute under novel set of facts (CL 1948, § 417.3).

BUTZEL and SMITH, JJ., dissenting.

Appeal from Workmen's Compensation Commission. Submitted April 5, 1955. (Docket No. 4, Calendar No. 46,151.) Decided October 3, 1955.

Thomas Lauder presented his claim for compensation against Paul M. Wiener Foundry, employer, and Michigan Mutual Liability Company, insurer, based on disability from silicosis, following which he suffered unrelated carcinoma. Award for compensation. Defendants appeal. Pending appeal, original petitioner died and case is continued in the name of Mary S. Lauder, administratrix. Reversed and remanded.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Benjamin Marcus,* of counsel), for plaintiff.

*L. J. Carey* and *George J. Cooper* (*James L. Schueler,* of counsel), for defendants.

CARR, C. J.. Plaintiff's intestate, Thomas Lauder, entered the employ of defendant Paul M. Wiener Foundry in 1945, working as a molder for several years. He contracted silicosis and on March 2, 1951, his employment was terminated. Subsequently he applied for compensation under the statute and following a hearing was awarded $26 per week for total disability from March 3, 1951, to March 5, 1951, and partial disability at the rate of $4.34 per week for the period between March 6, 1951, and August 3, 1952. During said period plaintiff was employed other than by defendant foundry. On the date last mentioned he had a position with an employer referred to in the record as the Manning, Maxwell, Moore Company and, also, as the Shaw-Box Crane. In such employment Lauder was in charge of a stockroom and his position involved not only the care of property but the keeping of records. It is conceded that in this employment he received wages equal to or greater than those paid to him by defendant foundry at the time of his disability from silicosis in March, 1951.

On or about September 1, 1953, it was discovered that Lauder was suffering from carcinoma of the throat, a condition that incapacitated him for further work. It is conceded that such condition was not related in any way to his silicosis. Under date of July 15, 1953, he made application for further compensation based on the occupational disease that brought about his release by defendant Paul Wiener Foundry in March, 1951. The matter was heard on stipulated facts and an award of compensation made at the rate of $26 per week from September 1, 1953, until the further order of the commission, but not exceeding the aggregate amount of $6,000. On review the award was affirmed by the workmen's compensation commission. On leave granted by this Court, defendants have appealed, claiming that under the

facts involved the award was not authorized by statute.

The legal question presented involves the interpretation of part 7, § 3, of the workmen's compensation law of the State.* Said section (CL 1948, § 417.-3 [Stat Ann 1950 Rev § 17.222]) read as follows:

"If an employee is disabled or dies and his disability or death is caused by a disease and the disease is due to the nature of the employment in which such employee was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement, and he shall be entitled to be furnished with medical and hospital services, all as provided in part 2 of this act, except as hereinafter stated in this part: Provided, however, That if it shall be determined that such employee is able to earn wages at another occupation which shall be neither unhealthful nor injurious and such wages do not equal his full wages prior to the date of his disablement, the compensation payable shall be a percentage of full compensation proportionate to the reduction in his earning capacity."

It does not appear that any case involving facts substantially identical with those in the case at bar has previously come before this Court under the section above quoted. However, in *Byrne* v. *Clark Equipment Co.*, 302 Mich 167, the question arose whether plaintiff had established by proof her right to compensation for the death of her husband, of whom she was a dependent. The death of the employee resulted from infection following an operation for an occupational hernia in connection with which an infected appendix was removed. The testimony taken on the hearing before a deputy commissioner did not disclose affirmatively that the death

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948 and CLS 1952, § 411.1 *et seq.* [Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 17.141 *et seq.*]).

resulted from the operation for hernia. The infection causing the result, under the medical testimony, might have had its source in the appendix. The award was set aside on the ground that it was obviously based on speculation and conjecture, the Court emphasizing that the burden was upon plaintiff to establish her claim. In discussing the situation, and after reference to statutory provisions relating to hernia, it was said, in part (p 176):

"Section 3 of the same part [7] of the act (CLS 1940, § 8485–3* [Stat Ann 1941 Cum Supp § 17.222]) provides, in part:

" 'If an employee is disabled *or dies* and his disability *or death* is caused by *one of the diseases* (hernia) mentioned in the schedule contained in section 2 of this part and *the disease is due to the nature of the employment* in which such employee was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement.'

"Section 8421, CL 1929 (Stat Ann § 17.155), provides that, 'if death results from the injury,' the employer shall pay the dependents of the employee the prescribed compensation for a period of 300 weeks from the date of the injury.

"Section 8428, CL 1929 (Stat Ann § 17.162), provides, in part:

" 'If the injury so received by such employee was the *proximate cause of his death,* and such deceased employee leaves dependents, as hereinbefore specified, wholly or partially dependent on him for support, the death benefit shall be a sum sufficient, when added to the indemnity which shall at the time of death have been paid or become payable under the provisions of this act to such deceased employee, to make the total compensation    *    *    *    equal to the

* This section, when amended, became CL 1948, § 417.3, previously cited. Other sections here mentioned, when amended, became CL 1948, § 412.5, as amended by PA 1949, No 238, and CL 1948, § 412.12.—REPORTER.

full amount which such dependents would have been entitled * * * in case the accident had resulted in immediate death.' "

It will be noted that certain words and phrases in the statutory provisions quoted by the Court were italicized for emphasis. It was, as before stated, a claim for compensation resulting from the death of the employee. If in the instant case the claim were of like character an award of compensation would be improper against these defendants unless death resulted from the silicosis. It may be noted that following the making of the award in his favor and after the appeal to this Court was taken Lauder died, inferentially from the throat condition and not because of the silicosis that he contracted while in the employ of the Paul M. Wiener Foundry. The administratrix was substituted as plaintiff. While the claim here is based on disability rather than on death, it will be noted that the statute groups the words together and contains nothing implying that different rules shall apply in a death case than under a claim for disability compensation.

Under part 2 of the workmen's compensation law, which governs compensation for disability resulting from personal injuries, other than occupational diseases, arising out of and in the course of employment, questions have arisen in prior cases involving the rights of the parties when an employee, previously suffering a compensable disability, is prevented in some way from earning wages in another employment. The statute above quoted, which controls the case at bar, obviously contemplates that if an employee is able to earn wages at another occupation, equal to those received prior to his disablement, he is not entitled to compensation. The amount of pay received in another employment is not necessarily controlling. Rather, the matter at issue in such case

is wage-earning capacity. In *Hood* v. *Wyandotte Oil & Fat Co.*, 272 Mich 190, the Court in discussing this question said, in part (pp 192, 193):

"What is meant by the term 'wage-earning capacity after the injury?' It is not limited to wages actually earned after injury, for such a holding would encourage malingering and compensation is not a pension. On the other hand mere capacity to earn wages, if 'nondescript' by reason of injury, affords no measure unless accompanied by opportunity to obtain suitable employment. Opportunity is circumscribed by capacity of the injured and openings to such a wage earner. In the instance at bar plaintiff's present wage-earning capacity, if he has any, appears to be limited to problematical employment as a barber under conditions suitable to, and favoring his physical condition and, therefore, in an existing labor market with an opening for such a handicapped employee.

"An injured person may recover to the point where he can, if favored, perform special service, if such is obtainable, but, if none can be obtained because of his injury, his capacity to work and earn cannot be measured against his incapacity. If his injury isolates him from employment then, of course, he is not to be held to have capacity to work and earn wages. If his injury has reduced his capacity to work and relegated him to the rating of 'odd lot' or 'nondescript' workers for whom labor openings are extremely limited, then opportunity, within his capacity, should be made to appear."

The foregoing language was quoted with approval in *Pigue* v. *General Motors Corporation,* 317 Mich 311, 316, 317. In that case plaintiff sustained a compensable injury and received compensation. Thereafter he was given a position by his employer doing clerical work. Subsequently the union of which he was a member called a strike, which continued for several weeks. Plaintiff made application for com-

pensation covering the period when he was not work-
ing because of such strike. An award in his favor
was set aside by this Court on the ground that the
inability to earn wages during the period in question
was not the result of the previous injury but solely
for a reason not in any way connected therewith. In
discussing the situation, it was said (p 316):

"The principle upon which compensation is award-
ed is, that the employee has suffered a loss in his
wage-earning capacity as a result of a compensable
injury suffered while in the employ of his employer."

A like result was reached in *Dunavant* v. *General
Motors Corporation*, 325 Mich 482. In that case the
plaintiff sustained an injury to his left hand and was
paid compensation for total disability for a period
of approximately 6 weeks. Thereafter the employer
furnished him with work at which he received wages
equal to those paid prior to his injury. However, the
employee had been afflicted with pulmonary tubercu-
losis, and suffered a recurrence of such ailment
which rendered him unable to carry on the work in
which he was at the time engaged. The workmen's
compensation commission allowed compensation for
total disability from the time that tuberculosis pre-
vented employment until the further order of the
commission. Following the decision in the *Pigue
Case* and other decisions of similar import, it was
held that plaintiff's inability to continue in his em-
ployment was not the result of the accidental injury
to his hand, that the employment in which he was
engaged was available to him, and that the sole
reason for his not continuing therein was the re-
currence of the ailment from which he had previous-
ly suffered.

In the recent case of *Adkins* v. *Rives Plating Cor-
poration*, 338 Mich 265, the plaintiff sustained an
injury while in the employ of the defendant and re-

ceived compensation for total disability. Subsequently he returned to work at wages equal to those that he formerly received. Approximately 3 months later he sustained an accidental injury while riding a bicycle on a public street, and made application for further compensation covering. the period during which he was unable to work because of the second injury. The award was made but on appeal was set aside by this Court on the ground that there was no causal relationship between the first and second injuries. In reaching such conclusion the Court distinguished prior decisions on which plaintiff relied, citing with approval *Rucker* v. *Michigan Smelting & Refining Co.*, 300 Mich 668, in which an award of compensation because of a so-called "second injury" was set aside on the ground that no causal connection was shown between such injury and the first compensable disability.

Summarizing the reasons for reversal in the *Adkins Case,* it was said (p 273):

"The affirmation of the award in the instant case would establish a precedent allowing compensation for subsequent injuries which have not arisen out of and in the course of the employment, which bear no relationship to the scope thereof and are but remotely connected with the original injury."

The Court also quoted with approval from *Simpson* v. *Lee & Cady,* 294 Mich 460, 463, as follows:

" 'The compensation law is to be construed liberally to provide indemnity for accidents peculiarly incidental to employment, but it was not intended to be health, accident and old-age insurance and spread general protection over risks common to all and not arising out of and in the course of employment.' "

Each case of this nature must be determined under proper legal principles and in accordance with the facts involved. In the case at bar plaintiff's intes-

tate, after leaving the employ of the defendant Paul M. Wiener Foundry, obtained a position with another company, which position he held until suffering a disability not connected in any way with his silicosis. There is nothing in the record to suggest that such position constituted "favored employment" as the term is commonly used. No reason is shown, or suggested, why the last employer had reason to give Lauder light work. The prior compensable disability had not been sustained in its employ. Apparently Lauder held a responsible position involving not only the care of property but the keeping of records that, inferentially, required some measure of skill and ability. Certainly such work was not of the type referred to in *Hood* v. *Wyandotte Oil & Fat Co.*, *supra*. Lauder was not in the category of a "nondescript" or "odd lot" worker.

It is a fair inference that if Lauder had not been stricken with the malady that resulted finally in his death he could and would have continued in his employment, or in other employment consistent with his abilities. There is nothing in this record suggesting that such work was not available. Assuming that he could not return to work as a molder, his ability to establish a wage-earning capacity in other employment was not thereby prevented. Having in mind the provisions of the statute above quoted, it is apparent that he was able to earn wages at occupations not unhealthful nor injurious, at wages equal to or greater than those paid to him at the time of his release by Paul M. Wiener Foundry in March, 1951.

It is the position of counsel for the plaintiff that if an employee sustains a disability preventing him from re-engaging in the particular kind of work in which he was employed at the time of such disability, but is able to do other kinds of work and to earn the same or higher wages as in the prior employment

and is prevented for any reason other than his own fault from continuing therein, he is entitled to demand the reinstatement of full disability compensation benefits payable for the original disability. In other words, an employer who has paid compensation because of loss of earning capacity in one line of work may find that his obligation is revived because of some occurrence having no relation to the employment in his service and not connected in any way with the disability there incurred. Under plaintiff's theory such result would follow in the instant case if Lauder had been injured in a traffic accident and permanently disabled, or had suffered a disabling injury arising out of and in the course of his employment by another. If plaintiff's argument is well-founded, the fact that resort might be had under the workmen's compensation law against the later employer would not be a bar to asserting further liability on the part of the employer paying the compensation in the first instance.

Such an interpretation of the statute obviously leads to the conclusion that an employer, situated as is the defendant, Paul M. Wiener Foundry in the present case, becomes an insurer as to an employee prevented from following one line of work but having an established wage-earning capacity in other lines. If plaintiff here is entitled to an award, such an employer is faced with possible added liability, that might arise in many different ways for reasons not connected with the original disability or with the employment in which it was sustained. We do not think that the statute may properly be so construed. Had the legislature intended such result, we think appropriate language indicating such liability would have been used.

Under the statute as interpreted in the *Byrne Case, supra,* a claim by dependents for benefits in the event of death of the employee, based on the pro-

visions of the statute relating thereto, would not be
well-founded and, as before noted, the language used
by the legislature indicates that the same principles
shall control in the event of compensation for dis-
ability as are applicable where claim is based on the
death of the employee. The principles suggested by
the language above quoted from the *Adkins Case*
are applicable here.

An order will enter remanding the case to the
workmen's compensation commission with directions
to set aside the award. No costs are allowed, the in-
terpretation of a statute being involved.

SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ.,
concurred with CARR, C. J.

SMITH, J. (*dissenting*). This is the fact situation
with which we are confronted: A workman receives
an injury under such circumstances as entitle him
to compensation, which is granted. He resumes
work, as best he can. Now the stage is set for the
controversy. Into this simple injury-compensation
situation a disrupting and often calamitous event is
interjected. The injured workman is struck by a
car, or he contracts tuberculosis, or leprosy, or
cancer. He may get drunk and be fired, or he may
go insane, or to jail. Before the supervening event
he may have been only partially in the labor market.
After it, he is completely out. What happens to his
compensation?

The Chief Justice has stated the facts. I will only
summarize the positions of the parties. For pur-
poses of clarity I will refer to the now-deceased
Lauder throughout as though he were the party
plaintiff, and defendant Paul M. Wiener Foundry
as the "foundry."

The foundry urges in this Court that Lauder had
established a wage-earning capacity in another oc-

cupation and that "until this wage-earning capacity is reduced or destroyed by his silicosis, he is not entitled to further compensation." Appellee, however, points out that Lauder was totally disabled because of his silicosis, argues that his stockroom job was favored, or substitute, work which did not establish an ability to earn wages in the statutory sense, and asserts, moreover, that the act nowhere requires that the injury must be the sole and exclusive cause of the workman's unemployment.

In shorter compass, what the parties are saying is this: The foundry asserts that Lauder should not receive compensation for being unable to work because of silicosis, since, even if the silicosis were removed, he would still be unable to work because of cancer. And, it adds, the cancer is completely unrelated to his work or his work injury. Lauder, on the other hand, states that he was totally disabled by silicosis, that he remained so to the day of his death, and the fact that cancer added its pangs to his miseries made him nonetheless totally disabled by the silicosis.

This is the same basic issue that is present in all the cases hypothesized. To the lunatic, the auto-accident victim, the tubercular, and the leper the employer says: "You couldn't work now even if you had not lost your arm in my plant." But each replies that his later misfortune did not restore the arm.

To bring the problem to an even sharper focus, we must keep in mind that we do not have here the question of whether the injury complained of was attributable to the employment. Obviously if such causal relation is lacking there can be no compensation. *Byrne* v. *Clark Equipment Co.*, 302 Mich 167. Nor do we have the problem of *increasing* compensation because of a supervening event not causally related to the employment. *Dunavant* v. *General Motors Corporation*, 325 Mich 482. See, also, *Adkins*

v. *Rives Plating Corporation,* 338 Mich 265, where the claimant's compensation had ceased because of his "partial recovery," but where he later filed for "adjustment of claim" because of an injury received one Sunday while riding a bicycle. Nor do we here confront the injured workman who is said to have voluntarily refused work, *Pigue* v. *General Motors Corporation,* 317 Mich 311, or to have been discharged for acts involving moral turpitude, *Todd* v. *Hudson Motor Car Co.,* 328 Mich 283 (gambling); *Garrett* v. *Chrysler Corporation,* 337 Mich 192 (drunkenness). Each of the latter types of case has its own unique problems arising out of the allegations of personal fault, and the cases do not serve as precedents in the particular area here under examination.

We will turn to the statute and consider the problem in the light of the statutory scheme. When faced with a problem of this importance, and of such complexity that it has heretofore divided our Court, it may be time well spent to go back to first principles to trace out again the familiar landmarks. As was said of the workmen's compensation act by this Court in *Hebert* v. *Ford Motor Co.,* 285 Mich 607, 610:

"Its enactment marked the crystallization into a legislative enactment of the economic fact that the ultimate consumer pays for the compensation of injured employees in the increased cost of the product. It aims at compensation, not damages. It is wholly substitutional in character and displaces the common-law liability for negligence. It should be administered substantially as insurance of a social character."

What are the requirements under the act for the receipt of what is termed "compensation"? (The term itself has a significance to which we will later

advert.). They are not complex. The statute states, very simply, that:

"An employee, who receives a personal injury arising out of and in the course of his employment * * * shall be paid compensation in the manner and to the extent hereinafter provided." (CL 1948, § 412.1 [Stat Ann 1950 Rev § 17.151].)

As far as occupational diseases are concerned, it is provided:

"(c) The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment." (CL 1948, § 417.1 [Stat Ann 1950 Rev § 17.220].)

And also:

"If an employee is disabled or dies and his disability or death is caused by a disease and the disease is due to the nature of the employment in which such employee was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement, and he shall be entitled to be furnished with medical and hospital services, all as provided in part 2 of this act, except as hereinafter stated in this part: Provided, however, That if it shall be determined that such employee is able to earn wages at another occupation which shall be neither unhealthful nor injurious and such wages do not equal his full wages prior to the date of his disablement, the compensation payable shall be a percentage of full compensation proportionate to the reduction in his earning capacity." (CL 1948, § 417.3 [Stat Ann 1950 Rev § 17.222].)

"Compensation shall not be payable. for partial disability due to silicosis or other dust disease." (CL 1948, § 417.4 [Stat Ann 1950 Rev § 17.223].)

The statutory scheme, then, is sweeping and comprehensive. Simply stated, the product itself must bear the cost of the casualties in its manufacture. If a workman is (1) injured (including diseased occupationally) in (2) his employment and (3) is incapacitated, he shall receive compensation. Methods of computation are spelled out in the act. These we need not pursue in detail. He does not receive damages in the common-law sense. There is no award for pain and suffering. There is no inquiry by a jury of his peers of the present value of the physical handicap he shoulders for the rest of his life. Instead of all this he receives a statutory award, called "compensation," which is, with certain modifications not important here, based upon loss of earnings only, rated by previous average weekly wages, a percentage of which is to be paid for a fixed number of weeks. There is no inquiry, as there is with a jury, as to the probable diminution over the entire lifetime of future earnings because of the disability. It will be well to keep this in mind when we consider abolishing this award because of some future supervening event.

Lauder qualified, under the act, for compensation. He (1) was injured in (2) his employment and (3) was incapacitated. He was thus properly awarded compensation. He could not, under the act, get his compensation while he was "able to earn wages at another occupation" but as long as he was able to do so he did not come into our Court. The reason he is here is precisely because he was unable to earn wages at another occupation. He claims no compensation for the period during which he worked as a stockroom keeper. His claim, and this appeal, relate to compensation for the period subsequent to such period of employment, namely, from September 1, 1953, until the further order of the commission.

The Chief Justice holds that Lauder had, with respect to his work in the stockroom, established, in another occupation, a "wage-earning capacity" as that term is used in the statute. I cannot agree. It is clear, in the first place, that wages actually earned, and earning capacity, are 2 entirely different matters. Wages earned are merely 1 of the factors to be considered in determining the earning capacity, which latter term, as we pointed out in *Hood* v. *Wyandotte Oil & Fat Co.,* 272 Mich 190, is a term of the most complex legal content. It does not mean simply the wages actually earned, for occasionally a completely shattered person may, by superhuman effort, earn for a short time certain moneys. Thus the claimant in *National Fuel Company* v. *Arnold,* 121 Colo 220 (214 P2d 784), who was partially paralyzed and unable to control bowel and bladder elimination, succeeded in holding a clerical position at an air base for 2 years. In affirming his award the court observed (p 226):

"We do not believe, the record fairly appraised, that either the employer or the insurance carrier involved may take advantage of the fact that this most unfortunate young man, who, persevering to the utmost, has at times, and under unusual circumstances, been able to obtain some employment, and work his undoing in the matter of compensation vouchsafed by statutory enactment."

At the other extreme it does not mean simply that the claimant in fact has earned nothing, for this would open the door to the malingerer and the sloth. Nor, if wages are actually earned, does their receipt establish the quantum of "capacity." A host of questions arise. Is the current wage level normal or abnormal? Is the current labor market advantageous or depressed? Was the employment due to charity or sympathy of the employer? Do the hours

worked compare favorably with a normal work day? The essence of the test is this: Can this particular workman, injured as he is, hold his own in a normal labor market, in competition with his fellow workman, in the judgment of an employer uninfluenced by sympathetic considerations? If so, he has an established earning capacity. If not, he is an odd-lot worker, dependent upon the vagaries of good fortune and human compassion.

What have we here to indicate Lauder's established earning capacity? I can find nothing but the receipt of earnings and I take it that nothing is clearer than that this element alone does not establish an earning capacity. Let us apply the test above enunciated. Let us examine the "earning capacity" of the claimant as he stands before us. He is over 60 years of age. He has been working for almost 50 years. He is totally disabled by silicosis. Is it conceivable that this man, so aged and so racked by disabling disease, can, with dependability, sell his faltering services in a competitive labor market? To me, the question answers itself. The wages he succeeded in earning, for a short period, do not, as a matter of law, establish an "earning capacity" as that term is used in the act. Rather, they establish but 1 thing, wages actually earned, and that factor, as we have seen, is only 1 of the elements to be weighed. His last efforts, totally disabled by silicosis as he was, to improve his lot cannot be said to have qualified him as a contender, fit and able, in the competitive labor market. Rather, as the North Carolina court put it, he chose to make his "heart and nerve and sinew serve their turn long after they are gone." *Honeycutt* v. *Carolina Asbestos Co.*, 235 NC 471, 477 (70 SE2d 426).

Such, indeed, was the view of the commission. It stated that Lauder was not physically capable of continuing what it termed his "favored work." That

such expression is justified from the record becomes clear from Lauder's cross-examination. He stated that his work consisted of "taking care of stock and keeping records, keeping track of where things are and what they are, and when they come in and when they go out and helping put up orders, if I feel like it." The employee who performs certain tasks if he feels like it is, indeed, favored among his fellows. Ordinary employment makes no such concession to feelings. The arrangement is a tribute to the compassion of the employer, not the competitive fitness of the employee.

I conclude, then, with the commission, that Lauder's work was favored and I cannot agree with the Chief Justice that an earning capacity had been established.

But there is an issue more fundamental in the case at bar than the technical concept of the wage-earning capacity. To meet it I will assume with the Chief Justice that Lauder's wage-earning capacity in the competitive labor market had been established. The concession does not, however, advance the foundry's case. We considered in *MacDonald* v. *Great Lakes Steel Corporation,* 274 Mich 701, the situation of the injured employee who, after obtaining other employment, is discharged therefrom and petitions for reinstatement of his original award. We commented thereon as follows in *Markey* v. *S. S. Peter & Paul's Parish,* 281 Mich 292, 300:

"But when, after such reduction or stopping of compensation by reason of employment and not because of a recovery of physical capacity to work, the employee seeks to have compensation restored by reason of the fact that he has lost his employment, it would be grossly unjust to require him to make a showing of actual change of physical condition. Such a ruling would discourage attempts at rehabilitation by imposing an unfair hazard there-

on. In *MacDonald* v. *Great Lakes Steel Corp.*, 274 Mich 701, it was held that where a disabled employee had had employment, compensation was stopped therefor and he had lost his employment, the department would be justified in holding that the employment had established a *prima facie* earning capacity but—'the ruling does not require the employee to show a change of physical condition after his discharge. Nor does it prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances.' "

In the case at bar the required showing has been made, namely, of complete loss of actual earning capacity after the second employment had ceased. It was stipulated, in fact, that he was disabled by his cancer from performing any type of work. Thus the issue arises: Does the fact that the cancer was unrelated to his silicosis and his work deprive him of compensation?

Let us recapitulate. Lauder was totally disabled when discharged by the foundry, and totally disabled he remained on September 1, 1953, after he had quit his stockroom job and as he awaited the inevitable. It is true, as the foundry points out, that at this time he could not have worked because of the cancer, for which the foundry was in no way responsible, and thus he could have earned no wages whatsoever. But this is not the test for compensation under the act. The act pays the workman on account of his disability, not on account of his wages lost. The loss of wages enters the scheme as bearing upon the amount of compensation, not as determining the right thereto. In other words, the workman qualifies under the act when he is injured in his work.

Let there be no confusion as to the function of a set-off. It does not determine the basis upon which compensation is made, and, *a fortiori*, it does not determine *ab initio* whether or not compensation shall be paid. As we said in *MacDonald* v. *Great Lakes Steel Corporation,* 268 Mich 591, 594:

"The proviso has no effect upon the determination of the basic computation of compensation. It merely allows a sort of set-off against it."

Having, then, received disabling injury in his work, is his compensation to be cut down or abolished because of a later illness? We know, of course, that he will, in common with the rest of mankind, inevitably wither and die. Will the onset of these human ills deprive him of the compensation theretofore awarded because of previous disability? I say not. The statute does not say that the disablement shall be *exclusively* due to the employment, and I cannot read into the act words so destructive of its purpose. The result of such interpolation is that one admittedly disabled by an industrial accident cannot, despite the clear intent of the act, receive the compensation awarded him in an enlightened twentieth century. And why? Because his already-disabled body eventually wears out. The point to stress is that he is nonetheless disabled because of the supervening ailment. His award should not, of course, be increased because of supervening old age or personal (*i.e.,* not work connected) illness, but it is equally certain, to my mind, that the legislature did not intend that the age or illness should cut off his compensation if his work-connected disability still continues.

In so holding, we merely reaffirm principles well settled years ago. In *Ward* v. *Heth Brothers,* 212 Mich 180, we denied an employer's petition to be relieved of payments because of supervening in-

sanity. In *Letourneau v. Davidson,* 218 Mich 334, supervening old age was not permitted to terminate award theretofore made, the Court stating that (p 340):

"Any attempt to determine that a part of the disability is due to an injury from which there has not been a recovery and a part to conditions incident to old age would be entering upon a field of speculation which we think neither the board* nor this Court should be at liberty to explore."

*Neal v. Stuart Foundry Company,* 250 Mich 46, was the jail case, where we affirmed the award in spite of defendant's argument that "the weekly award for that (jail) period should be suspended because the award is in lieu of earnings, and while the injured employee is in jail he has no earning capacity and, hence, he should receive nothing through the award." The unanimous Court pointed out that the act (p 50) "should not be thus complicated or its effectiveness thus impaired," and also observed, as we have pointed out, *supra,* that "being in jail could hardly increase his already total inability." The issue simply is whether or not a work-connected disability still exists. If so, compensation should continue to be paid.

My conclusions are fortified by the results of the contrary holding. A workman should not jeopardize his compensation for total disability because of his efforts to better his income. We should not, in our interpretation of the act, discourage self-help and efforts at financial improvement. Given a workman totally disabled by reason of industrial disease or accident, we should not slam in his face the door of initiative and hope under the threat of forfeiting

---

* The powers and duties of the industrial accident board, here referred to, are now vested in the workmen's compensation commission. See CL 1948, § 408.1 *et seq.* (Stat Ann 1950 Rev § 17.6[1] *et seq.*).—REPORTER.

a portion of his slender resources. The Kentucky court, in *Cornett-Lewis Coal Co.* v. *Day,* 312 Ky 221, 225 (226 SW2d 951) put the matter with a clarity deserving of repetition:

"The appellant seems to view 'total disability' as the deacon did the doctrine of 'total depravity.' Said he, 'It's all right if a man will just live up to it.' The claim is that this man did not live up to 'total disability.' "

I return, as always, to the statute. Lauder was totally disabled by reason of industrial disease during the time he here claims compensation. I cannot square the forfeiting of his total-disability payments (because of his efforts, *in extremis,* to add to his meager sustenance) with the words or the intendments of the act.

I would affirm the award. No costs, a question of statutory construction being involved.

BUTZEL, J., concurred with SMITH, J.