DEAN v CHRYSLER CORPORATION

Docket No. 84065. Argued November 7, 1989 (Calendar No. 7). Decided May 15, 1990. Rehearing denied 435 Mich 1204.

Corrine Dean was awarded workers' compensation benefits for injuries which arose in the course of her employment with Chrysler Corporation and for injuries subsequently sustained in a vehicular accident while en route to a doctor's office for the purpose of seeking further medical treatment for the original compensable injury. The Workers' Compensation Appeal Board affirmed, finding the subsequent injuries to be a consequence of the original. The Court of Appeals, SAWYER, P.J., and MAHER and T. M. BURNS, JJ., reversed in an unpublished opinion per curiam, relying on *Rucker v Michigan Smelting & Refining Co,* 300 Mich 668 (1942) (Docket No. 98898). The plaintiff appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice RILEY and Justices LEVIN and BRICKLEY, the Supreme Court *held:*

An injury incurred in a motor vehicle accident while en route for medical treatment of a prior injury compensable under the Workers' Disability Compensation Act is not itself covered by workers' compensation.

1. Eligibility for compensation under the Workers' Disability Compensation Act, as construed by *Rucker,* has always been limited to injuries arising out of and in the course of employment. When the no-fault system was enacted in 1972, a subsequent injury incurred in a motor vehicle accident while en route for medical treatment of a prior injury compensable under the workers' compensation act was not covered by workers' compensation. Rather, the Legislature intended that the costs of such accidents were to be born by the no-fault system.

2. Because *Rucker* was settled law in 1972 when the no-fault act was passed, there was no reason for the Legislature to anticipate an extension of workers' compensation liability to injuries incurred in a motor vehicle accident otherwise covered

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 313, 333.

See the Index to Annotations under Ambulances; Automobiles and Highway Traffic; Workers' Compensation.

by the no-fault act. Despite numerous opportunities to disturb the decision in *Rucker,* the Legislature has never seen fit to do so.

Affirmed.

Justice ARCHER, joined by Justice CAVANAGH, dissenting, stated that injuries arise out of and in the course of employment when they are the result of reasonable and necessary actions taken because of a previous compensable injury. Where a person is injured in an accident while en route to seek medical treatment for a prior compensable injury, the injuries arising out of that accident should be compensable under the Workers' Disability Compensation Act.

*Rucker* is no longer good law in Michigan. The theories on which it was based have been excised from jurisprudence interpreting the meaning of "arising out of and in the course of" employment. Proximate cause is no longer the test for compensability under the workers' compensation act; nor are the "peculiar and increased street risk" or "act of God" rules discussed in *Rucker* currently valid in Michigan.

The quasi-course of employment test incorporates the "arising out of" and "in the course of" employment tests. A subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of the primary injury. For an injury subsequent to an injury on the job also to be compensable, it is not necessary that employment proximately caused the second injury. Rather, such an injury is compensable when it arises out of activities which are reasonable and necessary in light of the compensable injury. While a claimant's negligence in causing the second injury will not break the chain of causation, the claimant's intentional conduct which causes the second injury, where the conduct may be regarded as expressly or impliedly prohibited by the employer, will break the chain. In this case, the claimant's trip to seek further care for her original compensable injury was both reasonable and necessary in light of the original injuries and thus also should be compensable.

Justice BOYLE, dissenting, also would adopt the quasi-course of employment test to determine whether the plaintiff's injuries are compensable under the workers' compensation act. However, remand to the wcab is required for further findings of crucial facts. The wcab made no finding on the question whether the plaintiff's accident was caused by her intentional conduct which might be regarded as having been expressly or impliedly prohibited by her employer.

WORKERS' COMPENSATION — COMPENSABLE INJURIES — SUBSEQUENT INJURIES.

> An injury incurred in a motor vehicle accident while en route for medical treatment of a prior injury compensable under the Workers' Disability Compensation Act is not itself covered by workers' compensation.

*Mancini, Schreuder, Kline & Conrad, P.C.* (by *Roger R. Kline*), for the plaintiff.

*Lacey & Jones* (by *Stephen Jay Schwartz*) for the defendant.

GRIFFIN, J. Plaintiff seeks workers' compensation[1] benefits for injuries incurred in an automobile accident while traveling from home to her doctor's office where she was to receive treatment for a prior work-related compensable injury. Nearly half a century ago, in *Rucker v Michigan Smelting & Refining Co,* 300 Mich 668; 2 NW2d 808 (1942), this Court held that a subsequent injury sustained under similar circumstances was not compensable because it did not arise "out of and in the course of employment" within the meaning of the act.[2] In this appeal we are asked to extend workers' compensation coverage to include plaintiff's automobile accident injuries. Taking into account that *Rucker* was the law in 1972 when the Legislature passed the no-fault act,[3] which allocated costs as between the no-fault and workers' compensation system, and noting that the Legislature, despite numerous opportunities to do

---

[1] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

[2] MCL 418.301; MSA 17.237(301) provides:

> An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act.

[3] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

so, has left undisturbed our holding in *Rucker,* we decline to overrule it. Accordingly, we affirm the decision of the Court of Appeals.

I

While engaged in defendant Chrysler's employ on April 1, 1978, plaintiff Corrine Dean suffered a work-related injury when an explosion hurled a piece of metal against her leg. Defendant does not dispute that this injury is compensable under the Workers' Disability Compensation Act. Plaintiff returned to work around May 19, 1978, and was placed on restricted or favored-work status. Plaintiff did not report to work on June 28, 1978, in order to attend an appointment with her personal physician to review the results of lab tests and receive further treatment in connection with the prior work-related leg injury. While en route from home to her physician's office plaintiff sustained multiple injuries in a one-car motor vehicle accident in which her car apparently flipped over a concrete barrier.

In addition to workers' disability compensation for the workplace leg injury, which is not contested, plaintiff seeks coverage under the act for the injuries sustained in the June 28, 1978, motor vehicle accident.[4] A hearing referee found that although "plaintiff's injury while travelling to the doctor's office [did] not constitute a new compensable injury . . . it [was] a consequence of the origi-

---

[4] We note that a distinction has been made between "aggravation" of a preëxisting compensable injury and a subsequent injury which is distinct from the prior work-related injury. See 1 Larson, Workmen's Compensation Law, § 13.11, p 3-348.91. In the past we have held that aggravation of a preëxisting occupational disease is also compensable. *Braxton v Chevrolet Grey Iron Foundry Div of General Motors Corp,* 396 Mich 685; 242 NW2d 420 (1976). However, Ms. Dean does not allege that the injuries she received in the automobile accident were an "aggravation" of the prior work-related leg injury.

nal injury and the disability . . . therefore, [was] compensable as resultant therefrom." The WCAB affirmed with modifications not relevant to this appeal.

Subsequently, a unanimous panel of the Court of Appeals reversed in an unpublished per curiam opinion.[5] Finding that *Rucker* controlled, the Court concluded that the injuries sustained in the automobile accident did not arise out of and in the course of plaintiff's employment because they were not the direct and natural result of the compensable primary injury.

Plaintiff's initial application to this Court for leave to appeal was denied. 431 Mich 913 (1988). However, plaintiff filed a motion for reconsideration, and we then granted leave to appeal. 432 Mich 921 (1989).

II

In *Rucker, supra,* the plaintiff suffered a work-connected injury while in the defendant's employ and was sent to a doctor who treated the injury. Afterwards, the doctor sent the plaintiff home in a taxicab at the expense of the defendant's insurer. While en route, the cab was involved in a collision, resulting in an injury to the plaintiff's eye. In determining whether the accident which occasioned the plaintiff's eye injury "arose out of and in the course of his employment," the *Rucker* Court stated the general rule that injuries arise out of the employment

"[w]hen there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed, and

[5] Docket No. 98898, decided August 10, 1988.

the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment." [300 Mich 671, quoting *Appleford v Kimmel*, 297 Mich 8, 12; 296 NW 861 (1941).]

The *Rucker* Court unanimously held that there was "*no* causal connection" between the prior work-related injury and the injury suffered in the taxicab collision. 300 Mich 672 (emphasis added). Although *Rucker* is virtually indistinguishable, plaintiff in this case urges that *Rucker* no longer controls. It is claimed that *Rucker* was overruled by the plurality decision in *Whetro v Awkerman*, 383 Mich 235; 174 NW2d 783 (1970), to the extent that *Rucker* required a proximate cause between the injury and employment. In *Whetro*, three members of this Court stated "that the law in Michigan today no longer requires the establishment of a proximately causal connection between the employment and the injury to entitle a claimant to compensation." *Id.* at 242.[6]

We reject the argument that *Whetro* had such an effect with respect to a subsequent injury that occurs away from the workplace. Aside from the fact that the *Whetro* plurality opinion is not prece-

---

[6] Justice BLACK "would" have supported the reasoning of the lead opinion in *Whetro* had the "question not been previously decided . . . ." However, since the question had been "settled by a series of unanimous decisions of this Court," 383 Mich 245, Justice BLACK's rationale for providing the fourth vote for affirmance was merely to "attain some judgment of a case in which the Court finds itself fractured into indecisive groups . . . ." 383 Mich 248.

dent,[7] it simply does not address the question of compensability of such a second or subsequent injury.

*Whetro* is distinguishable from *Rucker* on two grounds. First, the *Whetro* claimant was injured when a tornado destroyed the building *"wherein he was working for his employer . . . ." Id.* at 239. (Emphasis added.)[8] Thus, unlike the employee in *Rucker* and in this case, the claimant in *Whetro* was actually engaged in his employer's business when he was injured.[9]

Secondly, *Whetro*'s focus was not on a second or subsequent injury; rather, the question there was whether the first, and only, injury was compensable. By contrast, the issue in this case, as in *Rucker,* is whether a second or *subsequent* injury is compensable. Accordingly, *Whetro* did not overrule *Rucker,* expressly or by implication.

In his treatise on workmen's compensation, Professor Larson recognizes that the causation rules applicable to a workplace primary injury are not the same as the causation principles which should apply to a second or subsequent injury that occurs away from the workplace. As Larson explains:

> A distinction must be observed between causa-

---

[7] A "majority of the Court must agree on a ground for decision in order to make that binding precedent for future decisions." *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973). See also *Groening v McCambridge,* 282 Mich 135, 140; 275 NW 795 (1937), *Breckon v Franklin Fuel Co,* 383 Mich 251, 278; 174 NW2d 836 (1970), *In re Curzenski Estate,* 384 Mich 334, 336; 183 NW2d 220 (1971), *Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976), and *Apportionment of Wayne Co Bd of Comm'rs—1982,* 413 Mich 224, 249-250; 321 NW2d 615 (1982).

[8] In a companion case, *Emery v Huge Co,* the employee was "killed when the motel in which he was staying while on a business trip *for his employer* was destroyed by the tornado . . . ." *Whetro, supra* at 239-240 (emphasis added).

[9] In *Rucker, supra* at 672, the Court rejected the argument that the employee was still, at the time of the subsequent injury, under the control of his employer.

tion rules affecting the primary injury . . . and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. As to the primary injury, it has been shown that the "arising" test is a unique one quite unrelated to common-law concepts of legal cause, and it will be shown later that the employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability. *But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of "direct and natural results," and of claimant's own conduct as an independent intervening cause.* [1 Larson, Workmen's Compensation Law, § 13.11, p 3-502. Emphasis added.]

"The basic rule" to be applied to second injury cases according to Professor Larson

is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable *if it is the direct and natural result* of a compensable primary injury. [*Id.,* p 3-503. Emphasis added.]

However, Larson is required to concede that the "basic rule" is inadequate to justify compensation for most second injuries because, "in the strict sense, none of the consequential injuries we are concerned with are in the course of employment . . . ." *Id.,* § 13.11(d), p 3-542. Thus, Larson finds it "necessary to contrive" a new "quasi-course of employment" concept for analyzing the more difficult cases:

By this expression [quasi-course of employment] is meant activities undertaken by the employee

following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. [*Id.*]

In further explanation of his "quasi-course of employment" approach, Larson states:

There is no intention at this point to suggest that the formulation here worked out is drawn from the pronouncements of actual cases. On the contrary, the reported opinions have developed no satisfactory overall analysis of the problem. However, if one looks at the actual holdings, one can find considerable support for the proposition that the pattern of principle here developed is not out of line with the main body of case law on the subject. [*Id.*, p 3-546.]

While it may be true, as the dissent contends, that a tally of the decisions by courts in other jurisdictions would show that a slight majority line up with the approach taken by Professor Larson, that alone could hardly serve as a principled basis for reversal of the rule in *Rucker*.[10] Such reasoning

---

[10] Although Professor Larson states that courts have usually found a sufficient causal nexus merely because the prior injury occasioned the trip to the doctor, Larson, *supra*, § 13.13, p 3-564, in many of the cases cited by Larson a much stronger causal nexus was present. See, e.g., *Taylor v Centex Construction Co*, 191 Kan 130; 379 P2d 217 (1963) (the claimant's supervisor *directed* him to report to a certain doctor, the trip was on company time and company pay, gasoline for the trip was provided by the employer, and the accident occurred while claimant was returning to work); *Charles N Clark Associates, Ltd v Robinson*, 357 So 2d 924 (Miss, 1978) (the employer authorized and *suggested* that the claimant should see a doctor and offered to pay for the time missed); *Bettasso v Snow-Hill Coal Corp*, 135 Ind App 396; 189 NE2d 833 (1963) (the employer placed the claimant in an ambulance which was then involved in an accident as a result of

would disregard our duty to construe a statute so as to give effect to the Legislature's intent. As stated in *McKinstry v Valley OB-GYN Clinic, PC,* 428 Mich 167, 190-191; 405 NW2d 88 (1987):

> "In the interpretation of statutes, the legislative will is the all-important or controlling factor. Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law. Accordingly, the primary rule of construction of statutes is to ascertain and declare the intention of the legislature, and to carry such intention into effect to the fullest degree. A construction adopted should not be such as to nullify, destroy, or defeat the intention of the legislature." [Quoting 73 Am Jur 2d, Statutes, § 145, p 351.]

When, over a period of many years, the Legislature has acquiesced in this Court's construction of a statute, the judicial power to change that interpretation ought to be exercised with great restraint. On more than one occasion our Court has quoted with approval the statement that stare decisis

> "is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, the power to change the law as interpreted being regarded, in such circumstances, as one to be exercised solely by the legislature." [*Consumers Power Co v Muskegon Co,* 346 Mich 243, 251; 78 NW2d 223 (1956), quoting 21 CJS, Courts, § 214, pp 388-390. See also *In re*

slowing down for the company doctor); *Augustine v NYS Elmira Correctional Facility,* 64 AD2d 340; 410 NYS2d 141 (1978) (a department of the employer *ordered* the claimant to submit to an examination).

*Clayton Estate,* 343 Mich 101, 107; 72 NW2d 1 (1955).][11]

To the extent that prolonged acquiescence suggests legislative approval of the construction given by this Court to a statutory provision, it is reinforced when the Legislature reenacts the statutory language without change. In *Smith v Detroit,* 388 Mich 637, 650-651; 202 NW2d 300 (1972), we said:

> *"Even more persuasive is the rule that where the basic provisions of a statute have been construed by the courts and these provisions are subsequently reenacted by the legislature, it may be assumed that the legislature acted with knowledge of the Court's decisions and that the legislature intended the reenacted statute to carry the Court's interpretation with it."* [Emphasis in original.][12]

---

[11] " '*Stare decisis* is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right. This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation.' " *Abendschein v Farrell,* 382 Mich 510, 517; 170 NW2d 137 (1969) (citations omitted, quoting *Burnet v Coronado Oil & Gas Co,* 285 US 393; 52 S Ct 443; 76 L Ed 815 (1932) (Brandeis, J., dissenting). See also *In re Clayton Estate, supra* at 107; *Consumers Power Co v Muskegon Co, supra* at 251; *Whetro v Awkerman, supra* at 247 (BLACK, J., for affirmance).

[12] In *Sheppard v Michigan Nat'l Bank,* 348 Mich 577, 631-632; 83 NW2d 614 (1957), Chief Justice DETHMERS, concurring, wrote:

> Where a statutory provision is re-enacted without change in language, it must be presumed that the action was taken in light of prior judicial construction placed upon it and with the intent to adopt such construction. When the Supreme Court has placed an interpretation on a statute over a considerable period of years it may indulge in the judicial assumption that the legislature has been content with that interpretation because of its failure to exercise its independent prerogative to restate the provision. [Citations omitted.]

See also *Magreta v Ambassador Steel Co,* 380 Mich 513, 520; 158 NW2d 473 (1968) (" 'The silence of the legislature . . . to this Court's interpretation of its intent . . . can only be construed as consent to the accuracy of that interpretation' ").

Not only has the Legislature convened many times since *Rucker* was decided in 1942, but the Legislature on numerous occasions has revised and amended the act.[13] However, the Legislature has never seen fit to make a substantive change in the "out of and in the course of employment" requirement, nor has it undermined in any way this Court's construction and application of that language in *Rucker,* decided nearly half a century ago.[14]

Moreover, we believe that our decision today is consistent with the intent of the Legislature manifested by its reform efforts during the past decade. A purpose of the comprehensive 1980 and 1981 revisions of the workers' compensation system[15] was to overturn or modify expansive interpretations placed upon the act by this Court.[16] Although

---

[13] See, e.g., 1943 PA 245; 1954 PA 175; 1969 PA 317; 1980 PA 357; 1981 PA 200; 1984 PA 304; 1985 PA 103; 1987 PA 28.

[14] The Workers' Disability Compensation Act originated in 1912 (1st Ex Sess) PA 10. Over the years, the relevant statutory provision requiring that, to be compensable, the injury must arise out of and in the course of employment, has remained largely unchanged. The original statute provided:

> If an employe . . . receives a personal injury arising out of and in the course of his employment by an employer . . . he shall be paid compensation in the manner and to the extent hereinafter provided . . . .

The statute was amended by 1943 PA 245 to provide, in part, "An employe, who receives a personal injury arising out of and in the course of his employment by an employer . . . ."

The statute was amended once again by 1954 PA 175; however, the relevant phrase was not changed.

In 1969 PA 317, the Legislature revised and consolidated the workers' compensation act. Section 301 provided: "An employee, who receives a personal injury arising out of and in the course of his employment by an employer . . . ."

[15] 1980 PA 357; 1981 PA 192; 1981 PA 193; 1981 PA 194; 1981 PA 195; 1981 PA 196; 1981 PA 197; 1981 PA 198; 1981 PA 199; 1981 PA 200; 1981 PA 201; 1981 PA 202; 1981 PA 203.

[16] In general, see Booms & Salter, *Workers' disability compensation,* 27 Wayne L R 1035, 1053-1054 (1981).

the dollar amount of benefits payable to workers eligible for compensation was increased, there can be no doubt that the Legislature also intended through its 1980 and 1981 reform efforts to narrow and restrict the eligibility qualifications.[17] Against that background, and in light of the fact that the Legislature has never seen fit to disturb the rule in *Rucker,* we decline to overrule it because we believe that the Legislature intended the result we reach today.

### III

To hold that *Rucker* no longer controls the disposition of this case would not only require that we disregard legislative intent but it would have the effect of usurping legislative responsibility in an important respect. When the no-fault system was enacted in 1972, *Rucker* was the controlling law; it stood for the proposition that a subsequent injury incurred in a motor vehicle accident while en route for treatment of a prior compensable injury was *not* covered by workers' compensation. Thus, the Legislature's allocation of costs as between the no-fault and workers' compensation systems was made with an awareness[18] that the no-

That a line of this Court's decisions, handed down prior to 1980, "expanded and broadened the sweep of workers' compensation coverage" was acknowledged in *McClure v General Motors Corp (On Rehearing),* 408 Mich 191, 203; 289 NW2d 631 (1980) (opinion of RYAN, J.). For a list of this Court's decisions, regarded by Justice RYAN as having had that effect, see *id.* at 203, n 4.

[17] See Senate Analysis Section, SB 1044, January 7, 1981; 1980 Journal of the Senate 3439-3440 (statement of Senator VanderLaan); 1980 Journal of the Senate 821-822 (statement of Senator Welborn); also Booms & Salter, n 16 *supra,* pp 1053-1054.

[18] The Legislature is presumed to be aware of existing judicial interpretations of the law when passing legislation. *Jeruzal v Wayne Co Drain Comm'r,* 350 Mich 527, 534; 87 NW2d 122 (1957).

fault insurance system would shoulder the cost of such accidents.[19]

Justice LEVIN's reasoning in joining to form a majority for the result in *McClure v General Motors (On Rehearing),* 408 Mich 191, 210; 289 NW2d 631 (1980), which involved an off-premises lunchtime accident, is directly applicable to the instant case. As he then explained,

> Under the case law extant when the no-fault insurance act was enacted, employers were not generally liable for off-premises lunchtime injuries and thus, under the act, the motor vehicle insurer of the worker or a family member would ordinarily bear the entire cost of motor vehicle injuries during the lunch period. An extension today of worker's compensation coverage to lunchtime automobile injuries would, because of § 3109 of the no-fault act, allow the motor vehicle carrier a deduction for worker's compensation benefits payable and thus work a reallocation, probably unforeseen by the Legislature, of the cost of insurance reparations for such accidents from the no-fault system to the worker's compensation system. This Court should not disturb the cost allocation extant when the no-fault act was enacted.

Justice LEVIN further explained,

> It is no answer to say that because the purpose of § 3109 was to reduce the cost of no-fault insurance, a reallocation of the cost of [such] motor vehicle accidents away from the no-fault system furthers the Legislature's purpose. The legislative

---

[19] The dissent argues that the Legislature presumably was aware that *Rucker* was no longer good law in 1972, when it passed the no-fault act. We disagree. It is one thing to presume that the Legislature is aware of prior unanimous decisions, such as *Rucker,* and entirely another to suggest that the Legislature discerns that a plurality decision, such as *Whetro,* implicitly overruled a case which had, in 1972 when the no-fault act was passed, stood as precedent for thirty years.

decision embodied in § 3109 may have been based on assumptions regarding the existing costs to the worker's compensation system that did not include payment for [such] automobile injuries generally. An extension of worker's compensation liability to [such] automobile injuries not previously covered would impose on that system the greater part of the burden of providing insurance reparations for injuries heretofore compensated through the motor vehicle insurance system. [*Id.* at 229.]

As in the case of the off-premises lunchtime accident addressed in *McClure,* overturning *Rucker* would, for the first time, charge to the workers' compensation system the cost of injuries sustained in motor vehicle accidents while en route for treatment of a prior compensable injury. Because *Rucker* was settled law in 1972 when the no-fault act was passed, the Legislature had no reason to anticipate such an extension of workers' compensation liability to injuries incurred in a motor vehicle accident otherwise covered by the no-fault act. The result advocated by plaintiff would necessarily work a reallocation of the costs associated with such motor vehicle accidents as between the no-fault and workers' compensation systems, without clear direction from the Legislature.

For these reasons, and on the authority of *Rucker,* we affirm the decision of the Court of Appeals.

RILEY, C.J., and LEVIN and BRICKLEY, JJ., concurred with GRIFFIN, J.

ARCHER, J. (*dissenting*). The issue presented is whether an employee who suffers a compensable, on-the-job injury and subsequently is injured in a vehicular accident while en route to seek medical

treatment for that prior compensable injury, may receive compensation for the injuries arising out of the vehicular accident.

I believe that *Rucker v Michigan Smelting & Refining Co,* 300 Mich 668; 2 NW2d 808 (1942), no longer expresses the present state of the law in this area. I would, therefore, reverse the decision of the Court of Appeals and hold that injuries "arise[ ] out of and in the course of employment" when they are the result of reasonable and necessary actions taken because of a previous compensable injury. MCL 418.301; MSA 17.237(301). Where an individual is injured in an accident occurring while en route to seek medical treatment for a prior compensable injury, the injuries arising out of that accident should be compensable under the Workers' Disability Compensation Act. MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

I

Questions regarding whether a claimant's injury "aris[es] out of and in the course of employment," MCL 418.301; MSA 17.237(301), can be characterized as questions of law, questions of fact, or mixed questions of fact and law, depending on the facts of the case. *Koschay v Barnett Pontiac, Inc,* 386 Mich 223, 225; 191 NW2d 334 (1971). The issue in this appeal calls upon the Court to determine an issue of law. We take the WCAB's findings of fact as conclusive absent fraud. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). Those findings indicate that Ms. Dean suffered a compensable injury when she initially injured her right leg[1] and her automobile accident occurred while she was en

---

[1] The WCAB found as fact that the April 1 injury was compensable, noting that "[i]t was conceded . . . that the underlying event [the April 1 injury] was occupational in origin." 1987 WCABO 185.

route to seek treatment for her initial injury.[2] The findings in her decision to seek treatment for her initial injury also indicate that Ms. Dean acted reasonably.[3]

Thus, this Court is left with the task of determining a jural relationship: Given the fact that Ms. Dean was reasonably seeking treatment for a compensable injury when she was injured in an automobile accident, did her subsequent injuries arise out of and in the course of her employment?

The majority urges that the answer to that question lies in this Court's 1942 decision in *Rucker.* As the majority points out, *Rucker* is almost indistinguishable on its facts from this case. I believe we cannot follow *Rucker,* however, because that case does not express the law of this state. Though *Rucker* has remained on the books since 1942, it has been a dead letter for almost two decades because the theories on which that decision was explicitly based have been excised from jurisprudence interpreting the meaning of "arising out of and in the course of" employment.

The facts of *Rucker* are very similar to the facts of this case. Arthur Rucker was injured at work when a pot full of slag struck his leg. His employer sent him to a doctor's office for treatment. After examination and treatment, the doctor sent Rucker homeward in a taxi, at the expense of the employer's insurer. On the way home, the taxi in which Rucker rode was involved in an accident which cost Rucker the use of his left eye. He sued

[2] The board found that on June 28, 1978, Ms. Dean was on her way to Dr. Ganesh's office for "treatment for the residuals of an injury received in the course and scope of her employment . . . ." 1987 WCABO 189.

[3] The wcab stated, "[w]e certainly give greater weight to Dr. Ganesh's opinion [that plaintiff suffered continuing problems with her prior injury] than we do that of Mr. Lovernick, the defendant's compensation adjustor, who reached his conclusion that medical treatment was not justified . . . ." 1987 WCABO 189.

for and was awarded workers' compensation bene-
fits for his automobile accident injuries. This
Court, however, reversed that award. In ruling
against Mr. Rucker, this Court explicitly relied on
three theories. We based our opinion on the "pecu-
liar and increased street risk rule," on the "act of
God rule," and on the notion that to recover
disability compensation a worker must prove that
an employment-associated risk proximately caused
the injury.[4]

In *Rucker,* this Court cited *Appleford v Kimmel,*
297 Mich 8; 296 NW 861 (1941), and relied upon
that case's enunciation of a proximate-causation
test and the "peculiar and increased street risk
rule."[5]

> "[A]n injury which cannot fairly be traced to the
> employment as a *contributing proximate cause*
> and which comes from a hazard to which the
> workman would have been equally exposed apart
> from the employment. The causative danger must
> be peculiar to the work and not common to the
> neighborhood. It must be incidental to the charac-
> ter of the business and not independent of the
> relation of master and servant." [300 Mich 671,
> citing *Appleford* at 12-13. Emphasis added.]

We held that there existed "no causal connec-
tion between the leg injury received at the plant
and the eye injury received in the taxicab colli-

---

[4] I agree with the majority that, as Professor Larson put it, "[a]
distinction must be observed between causation rules affecting the
primary injury . . . and causation rules that determine how far the
range of compensable consequences is carried . . . ." 1 Larson, Work-
men's Compensation Law, § 13.11, p 3-502. One of the primary flaws
in *Rucker* is that it fails to observe this distinction. See *ante,* pp 661-
662.

[5] This version of the "street risk rule" was first adopted in this state
in *Pearce v Michigan Home & Training School,* 231 Mich 536; 204
NW 699 (1925). The *Pearce* Court adopted the test from the 1916
Massachusetts case *In re McNicol,* 215 Mass 497; 102 NE 697 (1916).

sion. The chain of causation was broken, and the eye injury came 'from a hazard to which the workman would have been equally exposed apart from the employment . . . .'" 300 Mich 672, citing *Appleford* at 12. Because we found that Rucker's job was not a "contributing proximate cause" of his injury, the risk of a taxicab accident was not peculiar to Rucker's employment and that the risks of automotive injury were not increased by Rucker's employment, we held that his eye injuries did not arise out of and in the course of his employment.

We further based our decision in *Rucker* on the "act of God" rule followed in such cases as *Thier v Widdifield,* 210 Mich 355; 178 NW 16 (1920). "Decision in the instant case is controlled by *Thier v Widdifield,* . . . where an employee was killed by a stroke of lightning during the course of his employment. This court held in that case, as we must hold here, that the accident was not one 'arising out of' the employment." 300 Mich 673. Because Rucker was not "exposed by the nature of the employment to this particular danger," we denied benefits. *Id.*

Proximate cause is no longer the test for compensability under the Workers' Disability Compensation Act. Neither are the "peculiar and increased street risk" or "act of God" rules still valid in the state. We should not follow *Rucker* because *Rucker* is no longer good law.

In *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 (1970), this Court reviewed the history and purpose of workers' compensation and found that proximate causation had previously ceased being the appropriate test for determining whether an injury arises out of and in the course of employment. The law "no longer requires the establishment of a proximately causal connection

between the employment and the injury to entitle a claimant to compensation. . . . [I]t can be said today that if the employment is the occasion of the injury, even though not the proximate cause, compensation should be paid." 383 Mich 242-243. Thus, the causational analysis that formed a basis for our decision in *Rucker* was explicitly expunged from the law in 1970.

Further, it is no longer correct to say, as we did in *Rucker,* that automobile accident injuries are not compensable if they do not arise out of risks "peculiar to" a worker's employment. Michigan law recognizes the compensability of "street risk" injuries where employment causes an employee to be exposed through work-related travel to an injury-causing risk, even though that risk was not peculiar to the employment. In 1916, this Court held that "[w]here employees are compelled during the course of their employment to travel about the streets, it does not seem to us to be unreasonable to say that the danger of being struck by street cars, automobiles, and traffic of every description should be taken account of." *Kunze v Detroit Shade Tree Co,* 192 Mich 435, 438; 158 NW 851 (1916) (compensation was awarded a foreman who was struck by a streetcar while traveling between job sites).

*Kunze* began a long line of cases[6] which hold that "[i]f, in the discharge of his duties, the employee is required to travel upon the highway or to use other means of transportation, and while so doing, in the performance of a service to his employer, he suffers an accidental injury caused by his so traveling, he is entitled to compensation." *Wilhelm v Angell, Wilhelm & Shreve,* 252 Mich 648, 652; 234 NW 433 (1931) (compensation was

---

[6] For a list of significant *Kunze* prodigy, see *Whetro, supra* at 242, n 3.

awarded an architect who was struck by a train while returning home from a work-related meeting).[7]

Although Arthur Rucker's injuries were caused by risks of the street, this Court found his case to be controlled by an "act of God" case, *Thier v Widdifield.*[8] *Rucker* at 673. However, the authority of "act of God" cases ceased in 1970, after this Court's decision in *Whetro.* In fact, *Whetro* explicitly overruled *Thier.* After *Whetro,* it is no longer necessary for a worker's compensation claimant to prove what Arthur Rucker could not establish— that an injury was proximately caused by a danger arising peculiarly from the nature of the employment.[9]

I would make explicit that the rule announced in *Rucker* is no longer valid. *Cessante ratione legis, cessat et ipsa lex.*[10] To the extent *Rucker* was not overruled when *Whetro* overruled *Thier,* it should be now.[11] *Rucker,* should not decide this case.

---

[7] The rule announced in *Kunze* is commonly known as the "actual street-risk" rule. Larson, *supra,* § 9.40, pp 3-67 to 3-73. Professor Larson describes this test as follows: "[I]f the employment occasions the employee's use of the street, the risks of the street are the risks of the employment, and, . . . '[i]t is quite immaterial whether the nature of the employment involves continuous or only occasional exposure to the dangers of the street.'" *Id.,* p 3-67, citing *Dennis v White & Co,* 1917 Law Rep (HL) App Cas 479; 10 BWCC 280.

[8] *Thier* held that a worker's death did not arise out of and in the course of his employment when he was struck by lightning while standing in the doorway of the employer's barn.

[9] The majority argues that *Whetro* is insufficient authority because the Court was divided and there is no majority opinion. We rely on the plurality opinion in *Whetro* nonetheless, because its treatment of the "actual" street risk rule merely followed established precedent and because Justice BLACK's opinion, which concurred in the plurality's result, does not question the validity of the plurality's reasoning insofar as it rejects the "act of God" and proximate cause tests. Justice BLACK wrote specifically to express his firm views regarding stare decisis and to call for a strictly proactive application of *Whetro's* rule.

[10] "The reason of the law ceasing, the law itself also ceases." Black's Law Dictionary (5th ed), p 207.

[11] *Rucker* has not been cited in a published opinion of this Court or

I agree fully with the majority's conclusion that controlling precedent, unchanged by the Legislature, should not lightly be amended under the doctrine of stare decisis. I am unconvinced that principles of stare decisis dictate a different result here despite the majority's argument to the contrary. In pronouncing the demise of the rule announced in *Rucker,* we would only be making explicit that which had long been implicit. Stare decisis is an important doctrine for promoting consistency in settled principles; it was never intended to resurrect a doctrinal corpse interred, undisturbed, for almost two decades. We have often in the past modified the definition of "arising out of and in the course of employment," even in the absence of legislative action, whenever new theories, new developments in the law, or new fact patterns have proven previous decisions to be unworkable, unfair, or anachronistic. See, e.g., *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958), which changed the law in the state regarding the compensability of injuries caused by horseplay, after noting that the cases upon which the previous rule was based had been overruled and review-

the Court of Appeals since our 1955 decision in *Lauder v Paul M Wiener Foundry,* 343 Mich 159, 167; 72 NW2d 159 (1955). Where it was cited before 1955, it was generally cited alongside *Appleford* in support of the long-since discredited "peculiar and increased street risk rule": "To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom." *Carner v Sears, Roebuck & Co,* 337 Mich 219, 229; 59 NW2d 263 (1953).

This Court has previously questioned the validity of the rule announced in *Appleford* and followed in *Rucker.* See, e.g., *Thomas v Certified Refrigeration, Inc,* 392 Mich 623, 630, n 2; 221 NW2d 378 (1974), where we questioned the validity of *Carner, supra* and *Meehan v Marion Manor Apartments,* 305 Mich 262; 9 NW2d 534 (1943), in light of *Whetro.* Both *Carner* and *Meehan* relied on *Rucker* and *Appleford.*

ing how the previous rule failed to comport with the principles and policies behind workers' compensation law.

## II

Given *Rucker*'s ceasing authority in this area, I would look to Professor Larson's treatise on workers' compensation to resolve this case. The majority, too, looks to Professor Larson for guidance but fails to apply Larson's rules to the facts of this case. The majority ignores the fact that Professor Larson regards injuries like Ms. Dean's as the paradigmatic example of compensable consequences of work-related injuries.[12]

According to Professor Larson's treatise, "[t]he basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." 1 Larson, Workmen's Compensation, § 13.11, p 3-503. The Court of Appeals adopted Professor Larson's analysis on this point in *Schaefer v Williamston Community Schools,* 117 Mich App 26; 323 NW2d 577 (1982).

As Professor Larson points out, this "direct and natural result" rule is easily applied in a variety of circumstances, such as where a worker is further injured by complications from the initial compensable injury, or where a compensable injury exacerbates a preëxisting medical condition. In those situations it is easy to characterize the secondary injuries as "direct and natural results" of compensable injuries. See Larson, *supra,* § 13.11(a), (b), pp 3-503 to 3-535. See also *Braxton v Chevrolet Grey Iron Foundry Div of General Motors Corp,* 396 Mich 685; 242 NW2d 420 (1976)

---

[12] See Larson, *supra,* § 13.13, p 3-564.

(aggravation of a preëxisting occupational disease is also compensable); *Klein v Len H Darling Co,* 217 Mich 485; 187 NW 400 (1922) (benefits were granted where a worker died of an emotional shock caused by the death of a fellow employee at his hands); *Adams v W E Wood Co,* 203 Mich 673; 169 NW 845 (1918) (reinjury of a compensable broken arm is also compensable when it was caused during the claimant's travel when returning to work on the company doctor's advice).

However, as is evident from our grant order, the facts presented here do not present so clear a case. We must decide whether Ms. Dean's injuries are a "direct and natural result" of her workplace injury, despite the lack of a direct causal connection between the first and second injuries. In analyzing this question, I find the "quasi-course-of-employment" test proposed by Professor Larson persuasive. The majority cites this test and then fails to apply it without explanation and, most significantly, without offering a test or framework to take its place. The best the majority can offer is a forty-year-old case that was conceptually debunked decades ago.

The quasi-course of employment test incorporates the "arising out of" and the "in the course of" tests. It makes compensable

> activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. [Larson, *supra,* § 13.11(d), p 3-542.]

The causal link required in this test is different from that required in tort law. For an injury subsequent to an on-the-job injury also to be compensable, it is not necessary that employment proximately cause the second injury. However, employment must be more than a "but for" cause of that second injury. An injury following the initial compensable injury is also compensable when it arises out of activities which are reasonable and necessary in light of the compensable injury. The claimant's negligence in causing the second injury will not break the chain of causation, but a claimant's intentional conduct which causes a second injury will where that conduct "may be regarded as expressly or impliedly prohibited by the employer." *Id.*, p 3-543.

To apply the quasi-course-of-employment test to Ms. Dean's case, I take as given that her April 1 injury was compensable,[13] her trip to Dr. Ganesh's office on June 28 was for the purpose of treatment for her work-related injuries,[14] and her decision to seek Dr. Ganesh's treatment that day was reasonable in light of those initial injuries.[15]

In light of these findings, it is for us to decide only whether it is reasonable and necessary for a person in Ms. Dean's situation to seek medical

---

[13] The WCAB found as fact that the April 1 injury was compensable, noting that "[i]t was conceded . . . that the underlying event [the April 1 injury] was occupational in origin." 1987 WCABO 185.

[14] The board found that on June 28, 1978, Ms. Dean was on her way to Dr. Ganesh's office for "treatment for the residuals of an injury received in the course and scope of her employment . . . ." 1987 WCABO 189.

[15] The WCAB stated, "[w]e certainly give greater weight to Dr. Ganesh's opinion [that plaintiff suffered continuing problems with her prior injury] than we do that of Mr. Lovernick, the defendant's compensation adjuster, who reached his conclusion that medical treatment was not justified . . . ." 1987 WCABO 189.

treatment for a work-related injury.[16] In other words, we must determine the jural relationship between trips to seek medical attention for compensable injuries and employment in terms of the workers' compensation statute.

For the following reasons, I would find that a trip to the doctor's office to seek treatment of a compensable injury is an activity that is reasonable or necessary in light of the initial compensable injury.

When Corrine Dean suffered an injury which arose out of and in the course of her employment on April 1, 1978, Chrysler Corporation had a duty to provide her with necessary medical care or reimburse her for her reasonable medical expenses occasioned by that injury. MCL 418.315(1); MSA 17.237(315)(1). This duty was required both by statute and by contract, since the terms of the state's workers' compensation statute can be said to be incorporated into an employment contract entered into and executed within this state. See *Wilson v Doehler-Jarvis,* 358 Mich 510; 100 NW2d 226 (1960); *Thomas v Parker Rust Proof Co,* 284 Mich 260; 279 NW 504 (1938); *Grand Rapids v Crocker,* 219 Mich 178; 189 NW 221 (1922). Ms. Dean had the right, under both the statute and her employment contract, to seek medical care on her own if Chrysler failed to provide it. MCL 418.315(1); MSA 17.237(315)(1).

Furthermore, Ms. Dean was under a duty imposed by the statute, and hence her employment contract, to seek medical attention in order to mitigate the damages of her April 1 injuries. See

[16] As Professor Larson noted: " 'Reasonable' at this point relates not to the method used, but to the category of activity itself." Larson, *supra,* § 13.11(d), p 3-542. Thus, we do not inquire into the reasonableness of Ms. Dean's decision to seek treatment on this particular day, or her decision to drive rather than take a bus, or the manner in which she drove.

*Bower v Whitehall Leather Co,* 412 Mich 172; 312
NW2d 640 (1981). Injured employees have a duty
to submit to proper medical and surgical treat-
ment. Any unreasonable refusal to do so will
release the employer's obligation to compensate
for a work-related injury. *Kolbas v American Bos-
ton Mining Co,* 275 Mich 616; 267 NW 751 (1936);
*Coombs v Kirsh Co,* 301 Mich 1; 2 NW2d 897
(1942); *Dyer v General Motors Corp,* 318 Mich 216;
27 NW2d 533 (1947).

Thus, Ms. Dean's trip to a doctor's office to seek
care for her April 1 injuries was both reasonable
and necessary in light of those injuries. Given the
WCAB's finding that Ms. Dean was en route to Dr.
Ganesh's office for the purpose of treating work-
related injuries, I would hold that the injuries
resulting from her automobile accident are also
compensable.[17]

---

[17] Again, I agree with the majority's observation that, in the words
of Professor Larson, "[t]here is no intention at this point to suggest
that the [quasi-course of employment test] is drawn from the pro-
nouncements of actual cases." 1 Larson, Workmen's Compensation,
§ 13.11(d), p 3-546.

However, I also agree with Professor Larson that "if one looks at
the actual holdings, one can find considerable support for the proposi-
tion that the pattern of principle here developed is not out of line
with the main body of case law on the subject." *Id.*

See, for example, *Adkins v Rives Plating Corp,* 338 Mich 265, 271;
61 NW2d 117 (1953), where we upheld the denial of compensation to a
worker who aggravated an industrial injury in a bicycling accident.
We noted that there was absolutely no link between Adkin's employ-
ment and bicycling, and "common sense would have dictated that, in
his condition, he refrain from such exposure."

Compare with *Adams v W E Wood Co,* 203 Mich 673; 169 NW 845
(1918), where compensation was awarded for the exacerbation of a
compensable injury caused in a street car accident when the claimant
was on his way to work. Thus, in the past we have recognized that
the compensability of secondary injuries is dependent upon some
reasonable relationship between the injury and the employment.

See also *Schaefer v Williamston Community Schools, supra* at 35,
where the Court of Appeals applied the "direct and natural result"
test and allowed compensation for a consequential injury. The Court
cited *Adkins* and noted it stands "for the principle, consistent with
Larson's view, that . . . the claimant had to prove that his subse-

The majority's holding puts this Court in a clear minority of courts that have addressed this issue. Most courts that have published opinions discussing the compensability of injuries consequential to on-the-job injuries have ruled in favor of a claimant injured en route to seek medical attention for prior injuries.[18] Professor Larson notes in his treatise at § 13.13, p 3-564, that "[w]hen an employee suffers additional injuries because of an accident in the course of a journey to a doctor's office occasioned by a compensable injury, the additional injuries are generally held compensable . . . ."[19]

quent injuries were the direct and natural result of his primary injury *and* that his own conduct did not act as an independent intervening cause . . . ." (Emphasis in the original.)

[18] I am in complete agreement with the majority in that it is the intent of our Legislature that controls our decision and not the interpretations of other jurisdictions. However, decisions of other courts throw light on the interpretation of this state's statute. *Wolanin v Chrysler Corp*, 304 Mich 164; 7 NW2d 257 (1943).

[19] The following states in the following cases have adopted analyses which recognize that injuries occasioned during the course of seeking treatment for prior compensable injuries are also compensable. Kansas: *Taylor v Centex Construction Co*, 191 Kan 130; 379 P2d 217 (1963) (automobile accident injuries are compensable when the accident happened while returning from an appointment where the compensable eye injury was examined); Maine: *Moreau v Zayre Corp*, 408 A2d 1289 (Me, 1979) (compensation was awarded when the claimant was injured in an automobile accident while returning from an appointment with the doctor who examined a work-related hand injury); Mississippi: *Charles N Clark Associates, Ltd v Robinson*, 357 So 2d 924 (Miss, 1978) (an employee's death was compensable where it was caused in an automobile accident while returning from the doctor's appointment suggested by the employer for treatment of a back condition aggravated by the employment); New Jersey: *Camp v Lockheed Electronics*, 178 NJ Super 535; 429 A2d 615 (1981) (compensation was granted for injuries inflicted in an automobile accident occurring while returning home from treatment administered by the authorized treating doctor for prior work-related injuries); New York: *Kearney v Shattuck*, 12 AD2d 678; 207 NYS2d 722 (1960) (compensation was awarded where pain from the on-the-job injury contributed to a slip and fall occurring during the journey home on the advice of the employer's physician); *Augustine v NYS Elmira Correctional Facility*, 64 AD2d 340; 410 NYS2d 141 (1978) (automobile accident injuries were compensable when the accident occurred during the trip to the doctor's office at the direction of the employer in connection with an application for benefits for a prior work-related disability);

Professor Larson indicates in his treatise that

> a fall or automobile accident during a trip to a
> doctor's office has usually been considered suffi-
> ciently causally related to the employment by the
> mere fact that a work-connected injury was the
> cause of the journey, without any necessity for
> showing that the first injury in some way contrib-
> uted to the fall or accident. Of course, if the prior
> injury in any way contributes to the second acci-
> dent, the case is that much stronger, as when pain
> or drugs or a weakened member may have played
> a part. [Larson, *supra,* § 13.13, pp 3-567 to 3-569.][20]

Massachusetts: *In re McElroy,* 397 Mass 743; 494 NE2d 1 (1986)
(compensation was granted for injuries sustained in an automobile
accident en route to obtain an examination and consultation with a
private physician regarding an on-the-job back injury); California:
*Laines v Workmens' Compensation Appeal Bd,* 48 Cal App 3d 872;
122 Cal Rptr 139 (1975) (compensation was granted where the em-
ployee was injured in a motorcycle accident en route to a medical
examination for a prior compensable injury); Indiana: *Bettasso v
Snow-Hill Coal Corp,* 135 Ind App 396; 189 NE2d 833 (1963) (the court
overturned the Industrial Board and awarded compensation to a
mineworker injured in an accident occurring when the ambulance
was transporting him to the hospital for treatment of a work-related
injury); Virginia: *Immer & Co v Brosnahan,* 207 Va 720; 152 SE2d 254
(1967) (compensation was granted where an employee "blacked out"
and crashed his automobile while on his way to have stitches removed
from a cut sustained at work).

[20] However, the following jurisdictions have denied recovery for
injuries occasioned by a trip to the doctor's office in the following
cases: Georgia: *Street v Douglas Co Rd Dep't,* 160 Ga App 559; 287
SE2d 586 (1981), app dis 165 Ga App 556; 302 SE2d 141 (1983) (no
recovery where a worker was injured in an automobile accident while
returning to work after a physical therapy session which the court
found to have happened on his own time); Idaho: *Kiger v Idaho Corp,*
85 Idaho 424; 380 P2d 208 (1963) (injuries resulting from an automo-
bile accident occurring during a trip to a doctor's office to seek
treatment for a compensable injury are not compensable because the
employment was not a contributing proximate cause of the injuries);
Louisiana: *Allstate Ins Co v Theriot,* 362 So 2d 1214 (La App, 1978),
rev'd on other grounds 376 So 2d 950 (La, 1979) (the employer's
insurer had no obligation to pay workers' compensation where the
employee was injured in an automobile accident occurring on his way
home after being discharged from the hospital where he was being
treated for a compensable injury); Pennsylvania: *Tatrai v Presbyte-
rian Univ Hosp,* 497 Pa 247; 439 A2d 1162 (1982) (a hospital employee
injured through the hospital's negligent provision of medical services

Given the board's finding that Ms. Dean's trip to Dr. Ganesh's office on June 28 was for the purpose of "obtain[ing] medical treatment for the residuals of an injury received in the course and scope of her employment," 1987 WCABO 189, the injuries she received in the accident en route to Dr. Ganesh's office are also compensable.

I disagree with the separate opinion in dissent favoring a remand to determine whether Ms. Dean's possible intoxication or some other intentional act on her part may have defeated the causal nexus between the first and second accident. I view the "intentional intervening act" issue in the quasi-course test as an affirmative defense Chrysler had the duty to plead and prove. I agree with the separate opinion that Chrysler would not be liable under the quasi-course test if it could prove that Ms. Dean intentionally drove while intoxicated, drove recklessly or intentionally caused the accident. However, proof of these sorts of actions have always barred workers from recovering for their injuries. Under MCL 418.305; MSA 17.237(305),[21] a claimant who intentionally causes an accident is clearly barred from receiving compensation.

Workers whose voluntary intoxication causes their injuries have been denied compensation, cf. *Rose v Paper Mills Trucking Co,* 47 Mich App 1; 209 NW2d 305 (1973), as have been workers injured by their own reckless driving, cf. *Day v Gold Star Dairy,* 307 Mich 383; 12 NW2d 5 (1943). See

was not restricted to a workers' compensation claim against the employer hospital which treated her in this instance as if she were a member of the general public).

[21] If the employee is injured by reason of his intentional and wilful misconduct, he shall not receive compensation under the provisions of this act.

also *Fortin v Beaver Coal Co,* 217 Mich 508; 187 NW 352; 23 ALR 1153 (1922).

Under *Adkins* and *Schaefer, supra,* it was clear to Chrysler that it could escape liability for a secondary injury by proving that Ms. Dean's intentional conduct caused her accident. In fact, Chrysler made this argument before the WCAB, noting that Ms. Dean received a traffic ticket because of the accident and referencing the accident report's mention that Ms. Dean might have been drinking. Chrysler has already made and lost the arguments for which the separate opinion in dissent would order a remand. I see no reason to send this case back in order to let Chrysler prove facts it could not or did not prove earlier regarding an accident that happened twelve years ago.

III

Finally, I address two policy concerns raised by the majority. The majority claims that this Court should follow legislative "reform efforts" which narrow the category of Michigan workers eligible for workers' disability compensation. *Ante,* pp 666-667. Citing Justice LEVIN's concurring opinion in *McClure v General Motors Corp (On Rehearing),* 408 Mich 191, 209; 289 NW2d 631 (1980), the majority also argues that we should deny Ms. Dean benefits because the Legislature has determined that her no-fault insurer should bear the risk imposed by Ms. Dean's automotive excursions to the doctor's office.

As to the first contention, while it may be true that the current legislative trend is generally to limit the number and types of compensable claims,[22] such "reforms" narrowing entitlements for other, specific categories of injured workers are

---

[22] We make no statement as to whether this trend exists.

not precedent for the issue before the Court and they do nothing to mitigate our clear duty to construe this remedial statute liberally. See *Bower, supra* at 191. The clear purpose of the Workers' Compensation Disability Act is to compensate persons injured on the job. *Basil v Butterworth Hosp,* 272 Mich 439; 262 NW 281 (1935). Therefore, it is this Court's duty to interpret the act so as to provide compensation to all persons whose injuries can be said to arise out of and in the course of employment, except where the Legislature clearly intends to exclude an employee from the benefits of the act. The majority fails to give effect to legislative intent because it denies compensation to a woman whose injuries are a direct and natural result of her employment.

I also reject the majority's reliance on Justice LEVIN's *McClure* concurrence for two reasons. First, this argument rests on the assumption that *Rucker* was good law in 1972, when the no-fault act became law. It was not. I agree with the majority that the Legislature is presumed to have been aware of existing judicial interpretations of workers' compensation law when it enacted the no-fault act. We can therefore presume that the Legislature was aware that the "peculiar and increased street risk rule," the "act of God rule" and the proximate causation rule upon which *Rucker* rested were no longer good law. *Rucker* was as much an anachronism in 1972 as it is today. The majority's reasoning threatens to atrophy our body of workers' compensation laws with cases involving automobile accidents decided prior to 1972. When it is clear to the Court and the Legislature that the doctrinal bases of a prior workers' compensation case are no longer valid, there is absolutely no reason the case should survive simply because it involves an automobile

accident. By 1970, *Rucker* was a dead letter, even though it had never been explicitly overruled. The Legislature did not breathe life into it by passing the no-fault laws.

Second, in advancing this policy argument, the majority would have us fix entitlements in this area, not on the basis of our interpretation of the language of the act, but on our best guess as to how the Legislature intended to allocate risk in this area, despite the clear pronouncement in the no-fault act that no-fault liability shall always be secondary to workers' compensation liability. Ultimately, the majority opinion requires us to allocate risk in contravention to legislative direction. This Court is precluded from setting workers' compensation disability policy in this state. *Buehler v Univ of Michigan,* 277 Mich 648; 270 NW 171 (1936). It is our task to take the statute as drafted by the Legislature and construe its language consistent with the legislative intent. We are only following the policy expressed by the Legislature when we construe this act to allow compensation to a worker who has proven the existence of injuries arising out of and in the course of her employment.

Furthermore, the majority fails to see that there are important differences between the Workers' Disability Compensation Act and the no-fault act besides the identity of the risk bearer. The workers' compensation act is not intended as a substitute for insurance. *Rector v Ragnar-Benson, Inc,* 313 Mich 277; 21 NW2d 129 (1946); *Luteran v Ford Motor Co,* 313 Mich 487; 21 NW2d 825 (1946). Therefore, we cannot believe the converse to be true, particularly where the Legislature has indicated within the language of the no-fault act that a no-fault insurer's liability is secondary to the liability of a workers' compensation insurer. See

MCL 500.3109; MSA 24.13109. Even though Ms. Dean is entitled to collect workers' compensation benefits for her injuries, she is not precluded from recovering against her no-fault insurer for benefits her workers' compensation insurer would not cover. *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980).

### CONCLUSION

In her automobile accident on June 28, 1978, Corrine Dean suffered injuries which arose out of and in the course of her employment. The Workers' Compensation Appeal Board found that Ms. Dean was on her way to her doctor's office, from whom she was receiving necessary treatment for injuries which she received in a compensable injury on April 1. Ms. Dean's trip to the doctor's office was a necessary and reasonable activity which she would not have undertaken but for her April 1 work-related injuries. The Court of Appeals incorrectly relied on *Rucker, supra* because the legal principles on which *Rucker* was premised are no longer valid points of law in this state. I would, therefore, reverse the decision of the Court of Appeals.

CAVANAGH, J., concurred with ARCHER, J.

BOYLE, J. (*dissenting*). I concur in Justice ARCHER's result which would adopt Professor Larson's quasi-course of employment test to determine whether plaintiff's injuries, sustained in an automobile accident en route to a doctor's appointment for the treatment of prior compensable injuries, are themselves compensable under the Workers'

Disability Compensation Act.[1] I write separately to acknowledge that the difficulty of expressing coherent principles is at the maximum in applying the range of consequences causation analysis to the quasi-course of employment question. In the context of this case, the analysis requires recognition of that aspect of the Larson analysis involving the "claimant's own conduct as an independent intervening cause." 1 Larson, Workmen's Compensation Law, § 13.11, p 3-502.

The WCAB in this case made no finding on the question whether plaintiff's automobile accident was caused by intentional conduct which might be regarded as expressly or impliedly prohibited by her employer. The board did remark that it found plaintiff's description of the accident "somewhat bizarre." From the testimony taken before the hearing referee, it appears that the accident occurred while plaintiff was driving west on the north side of Eight Mile Road where it intersects with Woodward Avenue, and divides the cities of Detroit and Ferndale. Ferndale Police Officer Stephen LaRowe testified that at this point Eight Mile Road passes under Woodward Avenue. Plaintiff was not on the portion of Eight Mile Road which passes under Woodward Avenue, but rather was driving on the surface portion of Eight Mile Road which intersects Woodward Avenue. Plaintiff's vehicle struck a cement barricade and fell a distance of twenty-five feet into the portion of Eight Mile Road which passes under Woodward Avenue. Officer LaRowe could not recall whether it appeared that plaintiff had been drinking, but he testified that he had indicated on his police report that plaintiff had been drinking. From the record before us, it is not at all clear how

---

[1] I agree that it may be inferred from the board's factual findings that plaintiff's trip to the doctor was reasonable or necessary.

plaintiff's role in the accident should be characterized, or whether she engaged in "intentional conduct which may be regarded as expressly or impliedly prohibited by [her] employer." *Id.*, § 13.11(d), p 3-543. To allow this Court to perform its reviewing function, the WCAB " 'should indicate the testimony adopted, the standard followed and the reasoning it used in reaching its conclusion.' " *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96, 101; 214 NW2d 794 (1974). This Court cannot discharge its responsibilities unless the WCAB makes findings as to crucial facts. *Aquilina v General Motors Corp,* 403 Mich 206, 213-214; 267 NW2d 923 (1978). I would remand to the WCAB.